**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**David "Tex" HILL, et al.,**
**Defendants–Appellees.**

No. 94–5183.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1994.

Decided June 6, 1995.

---

David G. Dake, Asst. U.S. Atty. (argued and briefed), Knoxville, TN, for U.S.

Herbert S. Moncier (briefed), David S. Wigler (argued), Knoxville, TN, for David "Tex" Hill.

Brandt W. Davis (argued and briefed), Knoxville, TN, for Donald R. Arden and Johnny H. Sparks.

Ralph E. Harwell, Harwell, Baumgartner & Willis, Knoxville, TN, for Luther G. Hill.

Gerald C. Russell, Maryville, TN, for Roy E. Sellars.

Kim A. Tollison, Federal Defender Services, Knoxville, TN, for Donna S. Suttles, Cheryl A. Freeman.

Charles B. Dungan, Jr., Maryville, TN, for William Samuel Orr.

Steven Oberman, Daniel & Oberman, Knoxville, TN, for Leon Kitts.

John E. Eldridge, Ray, Farmer, Eldridge & Hickman, Knoxville, TN, for Claude Richard Wall, Lloyd Eugene Cooper.

Joseph E. Costner, Maryville, TN, for Phillip C. Jones.

Steven G. Shope (briefed), Knoxville, TN, for Troy Max Campbell.

Jimmy Kyle Davis, Donald R. Coffey, Knoxville, TN, for Dick Chambers, Alice Faye Sauls.

Hubert D. Patty, Maryville, TN, for Thomas Randall Perkins.

Before: MERRITT, Chief Judge; KEITH and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

The question before us is whether, and to what extent, the aiding and abetting clause of 18 U.S.C. § 2 [1] applies to the "illegal gambling business" statute, 18 U.S.C. § 1955, a complex crime that in addition to illegality under state law as a predicate offense has requirements of size (five or more people), duration (30 days or more), and business activity ("whoever conducts, finances, manages, supervises, directs or owns") [2]. Find-

---

1. 18 U.S.C. § 2 Principals
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

2. 18 U.S.C. § 1955 Prohibition of illegal gambling businesses:
 (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

 (b) As used in this section—
 (1) "illegal gambling business" means a gambling business which—
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

ing persuasive a Second Circuit case holding that § 2 does not apply to a similar drug enterprise statute (discussed below), the district court held that the structure and wording of the gambling statute and the legislative history evince a Congressional intent to leave unpunished those who merely aid and abet but do not themselves conduct the business. The district court was concerned about extending the net of such a complex statute as § 1955 even further. It reasoned that the clear legislative policy not to punish small-scale gambling businesses, as well as bettors, would be thwarted by allowing prosecution under § 2. In a careful opinion Judge Jarvis dismissed the aiding and abetting charges against the defendants-appellees, including the owners of various retail food establishments, gas stations and bars who are alleged to have assisted a gambling enterprise by allowing Tex Hill to put illegal poker and slot machines in each of their stores in return for a share of the illegal gambling profits. The district court held that the only criminal liability possible for these defendants would be for a direct violation of § 1955. The government has appealed the dismissal of the aiding and abetting charges against all the defendants. We decide that we do have jurisdiction to hear this interlocutory appeal, and we reverse because we consider § 2 applicable to the gambling statute when, but only when, the aider and abettor has knowledge of the general nature and scope of the illegal gambling enterprise and takes actions that demonstrate an intent to make the illegal gambling enterprise succeed by assisting the principals in the conduct of the business.

### I. Jurisdiction

■ The government brings its appeal pursuant to 18 U.S.C. § 3731. That section provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Defendants Arden and Sparks contend that this Court does not have jurisdiction to entertain this appeal because only a portion of count two was dismissed. They argue that the statute only authorizes appeals from dismissals of whole counts, not parts thereof. This is substantially the position that Justice Stevens took in his concurrence in *Sanabria v. United States,* 437 U.S. 54, 78–80, 98 S.Ct. 2170, 2186–87, 57 L.Ed.2d 43 (1978). In his concurrence, Justice Stevens posited that § 3731 only authorized appellate jurisdiction over dismissals as to any one or more counts. He contended that "[t]he statute does not refer to 'subunit[s] of an indictment' or 'portion[s] of a count,' but only to 'counts,' a well-known and unambiguous term of art." *Id.* at 79, 98 S.Ct. at 2186 (citation omitted).

Justice Stevens' view was not shared by the majority of the Court, nor is it the prevailing rule among the circuits that have confronted the question. In a footnote in *Sanabria,* the Court agreed with the appellate court that "Congress intended to authorize appeals from any order dismissing an indictment in whole or in part":

Congress could hardly have meant appealability to depend on the initial decision of a prosecutor to charge in one count what could also have been charged in two, a decision frequently fortuitous for purposes of the interests served by § 3731. To so rule would import an empty formalism into a statute expressly designed to eliminate "[t]echnical distinctions in pleadings as limitations on appeals by the United States."

H.R.Conf.Rep. No. 91–1768, p. 21 (1970); accord S.Rep. No. 91–1296, p. 5 (1970). *Id.* at 69 n. 23, 98 S.Ct. at 2181 n. 23.

Aiding and abetting the violation of § 1955 is an independent basis of criminal liability. It could just as easily have been charged in a separate count. In fact, the defendants' main contention—that to allow a conviction

---

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

for aiding and abetting a violation of § 1955 extends the net of liability further than Congress intended—is itself evidence that § 2 provides an independent basis upon which a conviction could be secured. We, therefore, hold that the government has jurisdiction under § 3741 to bring this appeal.

## II. Discussion

### A. The Problem of Applying Principles of Accomplice Liability to Complex Statutory Crimes

As the number of complex criminal statutory crimes has proliferated over the last 30 years, and as the government has attempted to expand the net of criminal liability under them by charging accomplices in addition to principals, the case law and therefore the theory of federal accomplice liability has fallen into some disarray. Even in the days of relatively simple crimes at common law and in earlier federal statutes, the various theories of accomplice liability were often difficult to apply. In this new era of "predicate offenses" with multiple "ancillary conditions" and mandatory and other sentencing enhancements, the new complexity of the statutes is causing disparate results based on conflicting ideas of accomplice liability.

For example, the continuing criminal enterprise statute punishes drug "kingpins" with stiff penalties if the drug dealer has five or more employees and certain other conditions are met. In its opinion in the instant case, the district court relied upon *United States v. Amen*, 831 F.2d 373 (2d Cir.1987), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988). The Second Circuit held that § 2 aiding and abetting liability does not apply at all to the continuing criminal enterprise (CCE) statute, 21 U.S.C. § 848, because Congress only intended the CCE statute to apply to the organizer, supervisor, or manager of the large drug enterprise and to visit upon the perpetrator a harsh set of mandatory minimum penalties. *Id.* at 381. The court reasoned that to allow § 2 liability to attach would mean that a small-time supplier of drugs to the drug "kingpin" would be treated as a principal and subjected to penalties designed for a much more serious offender. The court recognized the inherent

unfairness of subjecting a potentially peripheral accomplice to severe penalties when an employee integral to the business would be exempt and recognized the practical difficulty of distinguishing an accomplice from an employee. *Id.* at 382.

The Seventh Circuit in a hotly contested *en banc* decision disagreed with the Second Circuit while recognizing that the five or more employees of the drug "kingpin" could not be convicted as aiders and abettors because the statute indicates a clear intent to exclude them from liability. *United States v. Pino–Perez*, 870 F.2d 1230 (7th Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989). The Seventh Circuit found that § 2 "automatically" applies to federal criminal offenses and disagreed that § 2 is generally inapplicable to the statute as the Second Circuit had held. *Id.* at 1233. The majority of the *en banc* judges held that nothing in the legislative history of § 848 prevented accomplice liability and reasoned that identifying accomplices would not be as difficult as the Second Circuit supposed, although the court was unclear about the nature of the mens rea element of accomplice liability under § 848. *Id.* at 1233–35.

Our consideration of this topic is assisted by Sharon C. Lynch's article in the University of Chicago Law Review, "Drug Kingpins and Their Helpers: Accomplice Liability Under 21 USC Section 848." 58 U.Chi.L.Rev. 391 (1991). The particular problem she examined in the article was the application of § 2 to § 848—the subject of the split between the Second and Seventh Circuits. Ms. Lynch concluded that courts need to adopt a more careful approach which neither results in a wholesale rejection of accomplice liability nor fails to define the intent element necessary to aid in the violation of each complex statutory crime. *Id.* at 411. Courts must tailor accomplice liability to the specific crime. As Ms. Lynch correctly observed, "Congress left to the courts the task of crafting a full doctrine of accomplice liability." *Id.* at 410.

### B. Knowledge and The Elements of a Section 1955 Offense

The first problem is that there is an element of confusion and inconsistency in cases

defining the knowledge required for a violation of the substantive offense under the illegal gambling statute. Without explaining its precise meaning, the Sixth Circuit in *United States v. Leon*, 534 F.2d 667, 674–75 (6th Cir.1976), held that a defendant need not have knowledge of all of the jurisdictional components of § 1955 (the existence of 5 or more people) if the defendant did in fact commit the acts in violation of the federal law. Other circuits have held that an individual accused of a substantive violation of § 1955 need not be aware of all of the federal ingredients contained in § 1955. *See, e.g., United States v. Cyprian*, 23 F.3d 1189, 1199 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 139 (1994); *United States v. Brick*, 502 F.2d 219, 224 (8th Cir. 1974); *United States v. Smaldone*, 485 F.2d 1333, 1348 (10th Cir.1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir.1973), *aff'd on other grounds*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The Tenth Circuit put it most strongly when it affirmed that defendants in "a very real sense [take] a risk when violating state gambling enactments that they might also come within full reach of federal criminal sanctions." 485 F.2d at 1348. These cases seem to conflict in theory with other cases under § 1955. In *United States v. Gilley*, the Ninth Circuit held that when defendants are indicted for conspiracy to violate § 1955 and challenge whether there is proof that their conduct violates federal law, the court would require proof that the defendants "knew or reasonably anticipated the involvement of five people," because otherwise "all that can be shown is that their contemplated conduct violates state law." 836 F.2d 1206, 1210 (9th Cir.). The court noted that the holdings in other cases, *United States v. Leon* included, were predicated on knowledge and agreement being legitimately inferred from the completed act. *See also United States v. Greco*, 619 F.2d 635 (7th Cir.1980) (same holding and reasoning as *Gilley* ); *United States v. Murray*, 928 F.2d 1242, 1251 (1st Cir.1991).

In our case, under § 1955, it is quite obvious that bettors should not be held criminally liable either under the statute or under § 2 and that local merchants who sell the accounting paper or the computers on which bets are registered are not sufficiently connected to the enterprise to be included even if they know that their goods will be used in connection with the work of the business. On the other hand, it seems similarly obvious that the seller of computer hardware or software who is fully knowledgeable about the nature and scope of the gambling business would be liable under § 2 if he installs the computer, electronic equipment and cables necessary to operate a "wire shop" or a pari-mutuel betting parlor, configures the software programs to process betting information and instructs the owners of the gambling business on how to use the equipment to make the illegal business more profitable and efficient. Such actions would probably be sufficient proof that the seller intended to further the criminal enterprise. We turn now to the legal theory to be used in distinguishing the cases and drawing the lines of accomplice liability under § 1955.

## C. A Refined Theory of Aider and Abettor Liability and Its Application To Section 1955

The classic formulation of aider and abettor liability under § 2 by Judge Learned Hand does not make the knowledge requirement of accomplice liability very clear: Such liability requires that the accomplice "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938). But wanting to make the venture succeed at least implies that the accomplice must know what the venture is. In our view in order to be guilty of aiding and abetting a § 1955 illegal gambling business, the federal law of accomplice liability should require a mental element or mens rea: the defendant must have knowledge of the general scope and nature of the illegal gambling business and awareness of the general facts concerning the venture. In this case, under the government's theory it must prove that each defendant knew that he was aiding a large gambling enterprise

that operated by placing video poker machines in local establishments and made a profit by splitting the net take with the owners of the premises where the machines were placed.

■ In addition to this knowledge about the business at hand, the aider and abettor must take action which materially assists in "conducting, financing, managing, supervising, directing or owning" the business for the purpose of making the business succeed. *Actus non facit reum, nisi mens sit rea,* "the act alone does not amount to guilt; it must be accompanied by a guilty mind." The intent must be to assist the gambling enterprise itself, not simply an intent to have a particular transaction with one of the principals, and the accomplice's action must promote the action denoted by one or more of the six transitive verbs—"conducts, finances, manages, supervises, directs, or owns." As this Court has said before, "specific criminal intent is an element of the offense of aiding and abetting." *United States v. Bryant,* 461 F.2d 912, 920 (6th Cir.1972). An aider and abettor need not know every last detail about § 1955 or even the precise number of principals involved in the gambling enterprise, but must know the general nature and scope of the gambling enterprise and have the intent to make the illegal enterprise succeed by assisting the principals in the conduct of the business. Under our holding, a transaction with a principal is not sufficient; the aider and abettor must assist the principal with the intent of making the illegal gambling business succeed. Of course, such intent to make the enterprise succeed is subject to proof in the usual ways.

The penalties for violating § 1955 are much more severe than the penalties for violating the predicate state law crimes. Section 1955 carries a fine of up to $20,000 and a prison sentence of up to five years. 18 U.S.C. § 1955(a). By contrast, Tennessee statutes make possession of a gambling device—T.C.A. 39–17–505—and promotion of gambling—T.C.A. 39–17–503—a class B mis-

demeanor which is punishable by imprisonment of not more than six months, or a fine not to exceed five hundred dollars, or both. T.C.A. 40–35–111.³ If an individual aids an illegal gambling business that, unbeknownst to him, meets the size, scope and duration requirements of § 1955, he will be convicted as a felon and receive the federal sentence. Absent mens rea, we might obtain the illogical result that one only guilty of aiding and abetting a state law misdemeanor could, by the operation of § 2 and § 1955, be deemed a principal in a federal felony. As the Supreme Court recently reiterated in *Staples v. United States,* " 'felony' is … 'as bad a word as you can give to man or thing.' " —— U.S. ——, ——, 114 S.Ct. 1793, 1803, 128 L.Ed.2d 608 (1994) (quoting *Morissette v. United States,* 342 U.S. 246, 260, 72 S.Ct. 240, 248, 96 L.Ed. 288 (1952)). Unless the defendant has some degree of knowledge about the principal's dealings, it is a mere fortuity what the actual size of the gambling enterprise turns out to be.

Requiring the accomplice to have knowledge about the illegal gambling enterprise and the intent to aid in its success provides protection against holding him liable where he accidently or peripherally aids or encourages the principal. The mental elements are important because an accomplice, by definition, has not engaged in the proscribed acts to the same degree as the principal, yet receives the same punishment. To ensure that the accomplice and the principal possess the same moral culpability, it is only just to require the accomplice to have the mens rea to aid the illegal gambling business—the entity proscribed under federal law.

Our holding accords with the reasoning employed by the Supreme Court in *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). In that case, the defendant, the owner of a sandwich shop in Chicago, was indicted for acquiring and possessing food stamps in violation of § 2024(b)(1). The Supreme Court held that

---

**3.** Only T.C.A. 39–17–504 Aggravated gambling promotion is a Class E felony. That statute provides: (a) A person commits an offense who knowingly invests in, finances, owns, controls, supervises, manages or participates in a gam-

bling enterprise. (b) For purposes of this section, "gambling enterprise" means two or more persons regularly engaged in gambling promotion as defined in § 39–17–503.

the statute requires a showing that the defendant knew his conduct was unauthorized by statute or regulations because any other interpretation could potentially criminalize a broad range of apparently innocent conduct. *Id.* at 426, 105 S.Ct. at 2088–89. As the Supreme Court observed in *Morissette v. United States*, at common law it was axiomatic that "to constitute any crime there must first be a 'vicious will.'" 342 U.S. at 251, 72 S.Ct. at 244 (quoting Blackstone, 4 William Blackstone Commentaries *21). "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." 342 U.S. at 250, 72 S.Ct. at 243. For this reason, the Supreme Court has required evidence of Congressional intent to dispense with mens rea as an element of a crime before the Court will do so itself. While allowing a gambling machine to be installed in a store, the conduct alleged in the present case, is not innocent, it is also not enough alone to warrant a felony conviction under the substantive federal statute. Therefore, proof of the aider and abettor's mens rea assumes a heightened importance under the law.

These requirements of mind and action find support in other cases. In *United States v. Giovannetti*, 919 F.2d 1223 (7th Cir.1990), the defendant rented a house to a gambling enterprise which operated "wire rooms for betting on sporting events" and in the course of reversing the aiding and abetting conviction the court suggests that the accomplice "must know what that venture is." *Id.* at 1229. In *United States v. South-ard*, 700 F.2d 1 (1st Cir.), *cert. denied*, 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), the defendants argued that they could not be held liable for aiding and abetting the transmission of wagering information in violation of 18 U.S.C. § 1084 [4] because the statute only criminalized those who were "'engaged in

the business of betting or wagering.'" *Id.* at 20. Much like in the present case, the defendants contended that they could only have been charged with the substantive crime, not aiding and abetting. After reviewing the various common-law exceptions to aiding and abetting liability and holding them inapplicable to the defendants, the court concluded that the defendants could, under certain circumstances, assist the principal in carrying on his gambling activities. *Id.* at 20. The court held that in order to prove the defendant guilty of aiding and abetting, the government had to prove that the codefendant was in the business of betting or wagering and "that defendant knew it and participated in it." 700 F.2d at 12.

In *United States v. Biasucci*, 786 F.2d 504 (2d Cir.), *cert. denied*, 479 U.S. 827, 107 S.Ct. 104, 107, 93 L.Ed.2d 54, 56 (1986), the defendants appealed their conviction of aiding and abetting the collection of unlawful debts in violation of 18 U.S.C. § 1961(6), § 1962. The defendants argued that in order to be guilty of aiding and abetting the RICO offense, the government was required to establish that the defendants had knowledge of the specific rates of interest being charged on the usurious loans. *Id.* at 512. The court had to sort out the interplay of three statutes: The New York usury law—N.Y.Penal Law § 190.40 (McKinney Supp.1986); RICO—18 U.S.C. § 1961(6), § 1962; and the federal aiding and abetting statute, 18 U.S.C. § 2. The question the court confronted was what knowledge and intent must a defendant have to be convicted of aiding and abetting a RICO offense. The court observed that RICO imposes no additional mens rea requirement beyond that found in the predicate crimes. Because the New York usury laws did not require knowledge of the rate, neither did RICO. Relying on cases such as *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), and *United States v. Yermian*, 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), among others, the court held that "knowledge of a fact need not be

---

4. Section 1084(a) imposes criminal penalties upon: "Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest...."

**1204**

proven to convict an aider or abettor, absent such direction in the statute itself." *Biasucci,* 786 F.2d at 513. The court, however, found no error in the instruction that the defendants must have an awareness of the " 'generally unlawful nature of the particular loan in question and also that it was the practice of the lenders to make such loans.' " *Id.* at 512. In *United States v. Greer,* 467 F.2d 1064 (7th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973), the defendant argued that he could not be guilty of aiding and abetting the transportation of stolen copper in interstate commerce, in violation of 18 U.S.C. § 2314, because the government did not show that he was aware of the thieves' plans to convey the copper interstate. The extent of the defendant's involvement in the crime was that he had told the other thieves where the truck with the copper was located, aiding and abetting a violation of 18 U.S.C. § 659. The government argued that knowledge of the interstate component of a criminal act is never a prerequisite to a finding of criminal liability. *Id.* at 1068. The court, however, reasoned that accomplice liability is limited by the general principles of criminal liability. The court stated that "[t]o allow a jury to infer an intent to aid in the commission of one offense from the demonstrated intent to aid in another earlier offense because the later crime is a foreseeable consequence of the earlier one, is to base criminal liability only on a showing of negligence rather than criminal intent." *Id.* at 1069. In overturning the defendant's aiding and abetting conviction, the court held that "where the relationship between the defendant's acts and the ultimate crime for which he is charged is as attenuated as it is in the instant case, we would require some showing of specific intent to aid in, or specific knowledge of, the crime charged." *Id.* Finally, in *United States v. Newman,* 490 F.2d 139 (3d Cir.1974) the court found error in a district court's jury instruction which read in part, "[T]o convict this defendant, you must find that he himself did to some extent participate in the offense by aiding or abetting or helping in its commission," because it did not apprise the jury of a mens rea requirement. *Id.* at 150. The court noted that upon this instruction the jury could have convicted the defendant on the basis of a conclusion that he participated in the activities without knowing of their "criminal objective." *Id.* at 142. The court held: "Unknowing participation is not sufficient to constitute an offense under the aiding and abetting statute. Rather, the government must prove beyond a reasonable doubt that the defendant participated in a substantive crime with the desire that the crime be accomplished." *Id.* at 142–43.

The preceding collection of cases demonstrates that in adapting the federal aiding and abetting statute to each substantive offense courts have on occasion been careful to require that defendants possess general knowledge regarding the activities prohibited under the substantive federal statute and the intent to assist those activities by their conduct. Such an approach reinforces our result in this case and is consistent with the general case law which holds that aiding and abetting does not itself define a crime, but must always be accompanied by an indictment for a substantive offense. *See Southard,* 700 F.2d at 19. Because aiding and abetting and the substantive offense are thus linked, courts correctly require defendants to possess a degree of knowledge about and intent to further the substantive offense.[5]

 The law is clear that before a defendant can be found guilty of aiding and abetting a violation of § 1955 a violation of § 1955 must exist. The case law holds and the government concedes that aiders and abettors cannot be counted as one of the statutorily required five persons. *See United States v. Morris,* 612 F.2d 483, 495–97 (10th Cir.1979). Therefore, a legal precondition to aiding and abetting liability is that the jury must find beyond a reasonable doubt

---

5. It is this dependency on a substantive offense that separates aiding and abetting from conspiracy. *See Feola,* 420 U.S. at 686–96, 95 S.Ct. at 1264–69 (holding that where knowledge of federal-jurisdiction-conferring elements is not required for conviction of the substantive offense, nothing in the language or purpose of the conspiracy statute requires it for a conspiracy conviction either). A conspiracy can exist even where there is no substantive violation whereas accomplice liability cannot.

that five people, all of whom need not be defendants, engaged in an illegal gambling operation which has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day. *See United States v. Murray,* 928 F.2d 1242, 1247 (1st. Cir.1991) ("The five persons found to be participants ... need not be indicted or named."). Any potential confusion should be prevented by a clear instruction that would first require the jury to find that a § 1955 offense has been committed and then to determine the aiding and abetting question.

Although defendants argue that Congress expressly intended to exempt operators of "Mom and Pop" businesses with fewer than five owners or employees from the reach of the statute, this does not mean that they are immune from aider and abettor liability under all circumstances. In *Gebardi v. United States,* 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932), the Supreme Court held that a prostitute who merely consents to being transported interstate cannot be held guilty of conspiracy to violate the Mann Act. She could not be found guilty of conspiracy because the substantive statute did not criminalize the prostitute's mere acquiescence. The Court recognized, however, that if the prostitute were to purchase the railroad tickets or if she made all the arrangements for transportation and was the moving spirit behind the plan, she could be held liable for aiding or assisting.[6]

The defendants admit that they could be counted as one of the statutorily required five if their conduct rose to the level proscribed by the statute. They are, therefore, unlike "mere gamblers" (bettors) who, as the legislative history indicates and the Supreme Court has held, are not liable under the statute. *See Sanabria v. United States,* 437 U.S. 54, 71 n. 26, 98 S.Ct. 2170, 2182 n. 26, 57 L.Ed.2d 43 (1978) ("§ 1955 proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor."); H.Rep. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. (Stat.)

4007, 4029. ("[§ 1955] does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet.").

Congress sought to exempt small businesses from the reach of § 1955 only because they did not implicate national concerns. The defendants admit that there is no legal barrier to their being held criminally liable for a substantive violation of the statute as long as they associate themselves with the large gambling business and are found by their actions to be conducting the enterprise's affairs. By similar reasoning, Congress' intent is not thwarted by holding the operators of small business liable as aiders and abettors when they knowingly associate themselves with a large gambling business and seek by their actions to make that business succeed. In this instance as well, the small business becomes part of the national problem that Congress sought to eliminate through § 1955.

In their separately submitted brief, defendants Arden and Sparks argue that they should not be liable under § 2(a) because they are employees of an alleged kingpin and such employees have not been subjected to liability as accomplices. They rest their argument on the following language from the Seventh Circuit's opinion in *United States v. Pino–Perez:* "As the government has rightly conceded in these cases, the persons supervised by the kingpin cannot be punished as aiders abettors." *See* Brief of Defendants–Appellees Arden and Sparks at p. 9, *quoting United States v. Pino–Perez,* 870 F.2d 1230, 1231 (7th Cir.1989). The defendants' argument is wholly without merit. The CCE is a different criminal statute with a different purpose and scope than § 1955. The CCE is only directed at kingpins, not employees. It is, therefore, logical to exempt employees from aider and abettor liability. Section 1955, by contrast, includes low-level operatives in an illegal gambling business. Congress did not intend to exempt them from liability either as principals or as aiders and abettors. Arden's and Sparks' status as em-

---

**6.** At that time, aiding or assisting was part of the substantive statute. 18 U.S.C. § 398 read in part, "Any person who shall knowingly transport of cause to be transported, or aid or assist in obtaining transport for...."

ployees does not protect them from aider and abettor liability. In addition, all the reasons for subjecting the other defendants to aider and abettor liability apply equally to Arden and Sparks.

 Finally, we address the argument made by all the defendants that we should apply the rule of lenity and strike aiding and abetting from the indictment because there is ambiguity concerning the purview of § 1955. The rule of lenity is a maxim of statutory construction. It is reserved for those cases where after " 'seiz[ing] every thing from which aid can be derived,' [the Court is] left with an ambiguous statute." *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting *United States v. Fisher*, 2 Cranch 358, 386, 2 L.Ed. 304 (1805)), *quoted in Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). This is not such a case. An analysis of the wording of § 1955 and its legislative history gives no indication that Congress sought completely to exempt aiders and abettors from criminal liability.

The ruling of the district court striking aiding and abetting from Count Two of the indictment is, accordingly, reversed and the case is remanded for further proceedings.