**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0146n.06
Filed: February 22, 2007

## No. 05-3645

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| JOHN A. MORRISON, | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| Defendant-Appellant. | ) |

Before:      **KEITH, COLE, Circuit Judges, and STEEH, District Court Judge.**[*]

**DAMON J. KEITH, Circuit Judge.**   Defendant, John A. Morrison, appeals his convictions

of (1) conspiracy to possess with intent to distribute more than 1500 grams of cocaine, in violation

of 21 U.S.C. §§ 841(a)(1) and 846, and (2) aiding and abetting a conspiracy to possess with intent

to distribute cocaine, in violation of 18 U.S.C. § 2.   Because we find insufficient evidence, we

**REVERSE** Morrison's convictions.

### I.

For the most part, the facts are undisputed.  On December 14, 2003, Wayne M. Saunders and

Edward J. Gutierrez rented a white 2004 Chrysler from Alamo Rental Agency in Los Angeles,

California.  Two days later in Illinois, Illinois State Trooper Thomas Sommers observed the car, with

California license plates, exceeding the speed limit.  Trooper Sommers followed the car to a gas

---

[*] The Honorable George Caram Steeh, United States District Court for the Eastern
District of Michigan, sitting by designation.

station where he encountered Saunders and Gutierrez, and became suspicious of the two when they appeared excessively nervous and their stories regarding their travel were unbelievable. Trooper Sommers issued a citation to the driver of the vehicle, Gutierrez.

Gutierrez then gave Trooper Sommers written permission to search the vehicle. During a cursory inspection of the underside of the vehicle, Trooper Sommers noticed that the gas tank had recently been removed and improperly reinstalled, raising a heighten suspicion of illegal activity. Trooper Sommers instructed Gutierrez to drive the vehicle to a nearby Amoco station, allowing several Illinois law enforcement officers to oversee the removal of the gas tank by a mechanic. Three individually packaged, heat-sealed bundles that contained in excess of 1.5 kilograms of cocaine (with a street value of $40,000 to $150,000) were found inside the gas tank. Saunders and Guiterrez were arrested.

Saunders and Gutierrez admitted that a man identified as "Jimbo" (later determined to be Carl DeLoach) hired them to deliver the cocaine to Cleveland, Ohio. DeLoach was to pay them $1,000 for delivering the drugs to Cleveland. Agreeing to assist law enforcement officers, Saunders and Gutierrez proceeded to Cleveland to conduct a controlled delivery of the cocaine to DeLoach. After contacting the Drug Enforcement Administration ("DEA") in Cleveland, a caravan of Illinois law enforcement officers escorted Gutierrez and Saunders to Cleveland where local DEA agents awaited their arrival.

While in route to Cleveland, Saunders and Gutierrez called DeLoach to update him of their travel progress. Officers monitored and recorded these communications. Nearly eight hours later, the caravan arrived at the Cleveland DEA, where agents quickly briefed the team on the controlled

delivery and then proceeded to a Holiday Inn on West 150th Street in Cleveland, Ohio. Gutierrez

and Saunders were placed in Room 508, which was equipped with surveillance equipment.

Sometime around 10:30 p.m., Saunders phoned DeLoach to advise him that they had arrived

in Cleveland. DeLoach, after providing Saunders with a telephone number, instructed him to call

"Johnny Mo" (later identified as the Defendant, John Morrison). Saunders phoned Morrison, as

instructed, and was advised by Morrison that he would arrive at the Holiday Inn within 20 minutes.

At approximately 11:11 p.m., Morrison arrived at the Holiday Inn and, with DEA agents

monitoring and recording his interactions, exchanged greetings with Saunders and Gutierrez.

Morrison jokingly complained about how Saunders and Gutierrez had "stolen his run." He then

informed Saunders that he had conferred with DeLoach, who instructed him to have Saunders follow

Morrison in the rented Chrysler to Morrison's residence, where they should park the Chrysler in the

garage. After parking the Chrysler at Morrison's residence, Morrison was then to drive Saunders

to DeLoach's residence in Morrison's personal vehicle. Morrison told Saunders to phone DeLoach

if he wanted to verify the plan. Before Morrison and Saunders's departure, Gutierrez informed

Morrison that he would not be joining them, but requested Morrison to bring "some money" back

to the hotel later that evening, to which Morrison agreed.

Prior to leaving the Holiday Inn, Morrison gave Saunders specific instructions to avoid being

stopped for traffic offenses. On arrival at Morrison's residence, Morrison parked his vehicle on the

street and directed Saunders to back the Chrysler into the driveway. When Saunders had trouble

maneuvering the Chrysler, Morrison directed Saunders to exit the Chrysler, and proceeded to back

the Chrysler into his garage — with the rear of the Chrysler parked away from the garage door, at

a diagonal angle. Morrison locked the garage door and headed back to his own vehicle,[1] where Saunders joined him. The two then proceeded to DeLoach's residence.

In route to DeLoach's residence, the conversation between Morrison and Saunders was recorded via a device officers had strapped to Saunders. Morrison assured Saunders that they did not have to worry about getting stopped by the police any longer because they were now "clean." (J.A. at 428, 485, 500). Among other topics of discussion during the ride, Morrison briefly mentioned a recent, unrelated drug bust in Westlake; his acquirement of a commercial drive license; and his ability to drive from Los Angeles to Cleveland in a day and a half.

After arriving at DeLoach's residence, DeLoach congratulated Saunders, stating to Saunders "You all didn't get pulled over. You all did good." (J.A. at 436). DeLoach and Saunders discussed the payment that DeLoach would provide to Saunders and Gutierrez — though there was no discussion about the cocaine. In the presence of Morrison, DeLoach handed Saunders $960 in exchange for the Chrysler keys. DeLoach also gave Morrison $40 for bringing Saunders to his residence. DeLoach then told Morrison that Morrison would not be going to his regular job as a truck driver the next day because he would be working for DeLoach as his "head mechanic." (J.A. at 488). At that point, law enforcement agents and officers raided DeLoach's residence, taking DeLoach, Saunders, and Morrison into custody. Unaware of the extent of the investigation,

---

[1] It should be noted that Morrison disputes the credibility of the officer who testified that Morrison locked his garage door. However, as "'[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence,'" *United States v. Gibbs*, 182 F. 3d 408, 424 (6th Cir. 1999), we place no weight on Morrison's contention.

Morrison gave the officers his mother's home address as his place of residence — though he had not lived with her in 24 years.

On January 13, 2004, Morrison was indicted on one count of conspiracy to possess with intent to distribute more than 1500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of aiding and abetting a conspiracy to possess with intent to distribute, in violation of 18 U.S.C. § 2.[2] On December 7, 2004, after listening to Morrison's testimony — and without any testimony from the alleged co-conspirators — a jury found Morrison guilty on both counts. On April 28, 2005, Morrison was sentenced to 63 months of incarceration, followed by 4 years of supervised release, a $1,000 fine, and a $100 special assessment fee.

On appeal, Morrison contends that (1) there is insufficient evidence to support his conviction for conspiracy to possess with intent to distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 846; (2) there is insufficient evidence to support his conviction for aiding and abetting a conspiracy to possess with intent to distribute pursuant to 18 U.S.C. § 2; and (3) the district court imposed an unreasonable sentence pursuant to *United States v. Booker*, 543 U.S. 220 (2005). With respect to the insufficiency of the evidence, we agree with Morrison's assessment. We, therefore, do not address his *Booker* claim.

## II.

### 1. The Insufficiency of the Evidence

#### A. Standard of Review

---

[2] The indictment also charged DeLoach, Saunders, and Gutierrez, who ultimately pled guilty pursuant to plea agreements.

"In determining the sufficiency of the evidence to support a guilty verdict 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[3] *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In undertaking this task, the Court must "refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). However, "[e]vidence that at most establishes no more than a choice of reasonable probabilities cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal." *United States v. Saunders*, 325 F.2d 840, 843 (6th Cir. 1964).

### B. Application to Morrison's § 841(a)(1) and § 846 Convictions

Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly and intentionally distribute, or possess with intent to distribute, a controlled substance. Any person who conspires to commit a violation of § 841(a)(1) shall be guilty of conspiracy under 21 U.S.C. § 846. Hence, "[t]o establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999). The parties' agreement need not be explicit, but a tacit

---

[3] Notably, the sufficiency-of-the-evidence standard does not merely amount to some superficial, flexible "common sense" analysis (that is, whether any rational trier of fact could have found the crime's essential elements through "common sense" alone). Though "common sense" certainly factors into the equation, the sufficiency-of-the-evidence standard clearly requires more than this — to wit, *beyond a reasonable doubt. See Pearce*, 912 F.2d at 161; *see also United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995) (noting the "distinction between common sense, as methodology, and the beyond-a-reasonable-doubt standard, as a quantum of proof"). Stated otherwise, the issue is not whether common sense leads to a certain conclusion, but whether that conclusion withstands reasonable doubt. *But see* Dissent's Opinion.

or material understanding among the parties is sufficient. *See United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997). Finally, "[a]lthough only 'slight' evidence is needed to connect a defendant to a conspiracy, 'mere association with conspirators is not enough to establish participation in a conspiracy.'" *United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999) (quoting *Pearce*, 912 F.2d at 162).[4] Our notion of justice, that is to say, requires that "guilt must remain personal and individual, and a conviction, especially on charges relating to a conspiracy, must rest on individual guilt proven beyond a reasonable doubt." *United States v. Samuels*, 741 F.2d 570, 575 (3d Cir. 1984) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

In the instant case, two elements of the crime of conspiracy — namely, an agreement and participation — are easily satisfied. There is no question that an agreement existed. Saunders, Gutierrez, and DeLoach each pled guilty to conspiring to possess with intent to distribute cocaine. It is also clear that Morrison participated in the conspiracy — in that he harbored the Chrysler at his residence and drove Saunders to DeLoach's residence.

The critical evidentiary question, however, is whether, after viewing the evidence in a light most favorable to the Government, any rational trier of fact could conclude beyond a reasonable doubt that Morrison had "the knowledge and intent to join the conspiracy." *Layne*, 192 F.3d at 567. Needless to say, "[w]ithout the knowledge, the intent cannot exist," *Direct Sales Co. v. United*

---

[4] As the Court of Appeals for the Fourth Circuit has explained, "Requiring that the defendant's connection to the conspiracy be 'slight' in no way alleviates the Government's burden of proving the existence of the conspiracy and the defendant's connection to it beyond a reasonable doubt. The term 'slight' does not describe the *quantum* of evidence that the Government must elicit in order to establish the conspiracy, but rather the *connection* that the defendant maintains with the conspiracy." *United States v. Burgos*, 94 F.3d 849, 861 (4th Cir. 1996) (en banc).

*States*, 319 U.S. 703, 711 (1943), and, were Morrison's knowledge of the conspiracy to be proven, proof of his intent to join and further the objectives of the conspiracy would easily follow, given his participation. The dispositive issue, therefore, is whether there is sufficient evidence that Morrison had knowledge of the conspiracy to possess with intent to distribute cocaine.

While a co-conspirator need not know every single detail of the conspiracy, our Court has consistently held that "[p]roof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy." *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986) (internal quotation marks omitted); *see also United States v. Hodges*, 935 F.2d 766, 772 (6th Cir. 1991). Though "[c]ircumstantial evidence is sufficient to prove the elements of [a] conspiracy," *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993), knowledge (like every element of the offense) must be proven "beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "'It is not enough for [the evidence] merely to establish a climate of activity that reeks of something foul.'" *United States v. Wright*, 12 F.3d 215, 1993 WL 465164, at *4 (6th Cir. Nov. 10, 1993) (table) (per curiam) (alteration in original) (quoting *United States v. Wieschenberg*, 604 F.2d 326, 332 (5th Cir. 1979)). In essence, therefore, "evidence of knowledge must be clear, not equivocal." *Direct Sales Co.*, 319 U.S. at 711; *see also Stanley v. United States*, 245 F.2d 427, 430 (6th Cir. 1957). "To require less of the Government would eviscerate its burden to prove all elements of a crime beyond a reasonable doubt and relieve it of its burden of vigilance in prosecuting crimes — thereby violating bedrock principles of our Anglo-American jurisprudence." *United States v. Burgos*, 94 F.3d 849, 861 (4th Cir. 1996) (en banc) (citing *In re Winship*, 397 U.S. 358 (1970)).

In applying these principles, our Court has reversed conspiracy convictions where there was

insufficient evidence of a defendant's knowledge. In *United States v. Wright*, for example, we reversed a defendant's conviction of conspiracy to possess marijuana with intent to distribute where "the slim circumstantial evidence consisted only of: 1) testimony that others could smell raw marijuana in parts of the house [that the defendant agreed to housesit]; 2) [an alleged co-conspirator's] belief or assumption that [the defendant] was paid approximately $1,000 by someone else, and 3) the fact that other people were often paid to babysit the marijuana [in the house]." 1993 WL 465164, at *4. After dismissing part of the evidence as nonprobative of the defendant's knowledge, we noted that "the smell of marijuana [was] the *only* evidence offered to prove that [the defendant] knew marijuana was in the house when he housesat" for the alleged co-conspirator, *id.*, and that "[t]he multiple inferences [needed to support a conviction for conspiracy to possess with intent to distribute] from the smell of marijuana alone are impermissible." *Id.* Therefore, without sufficient evidence of the defendant's knowledge, we were compelled to reverse his conviction of conspiring to possess with intent to distribute marijuana.

Similarly, in a Third Circuit case, *United States v. Wexler*, 838 F.2d 88 (3d Cir. 1988), the defendant was convicted of conspiring to distribute marijuana where the evidence before the jury demonstrated that the defendant had served as a "lookout" for a rented cargo truck that contained 750 pounds (worth $1.8 million) of marijuana. In reviewing his conviction under the sufficiency of the evidence standard, the court quickly noted that the evidence admittedly amounted to "ample circumstantial evidence . . . from which the jury could have concluded that [the defendant] was involved in a conspiracy with [his] co-defendants . . . and that the conspiracy involved movement of cargo of the truck." *Id.* at 91. However, the court recognized, "[w]hat [was] missing [was] any

evidence that [the defendant] knew that a controlled substance was couched behind the doors of the [rented cargo] truck." *Id.* Though the factual circumstances undoubtedly showed that it was "more likely than not that [the defendant] suspected, if not actually knew, that some form of contraband was involved in the elaborate secretive arrangements for transport in which he participated," the court admonished, "these permissible inferences do not support a holding that the government met its burden to prove beyond a reasonable doubt that [the defendant] knew this was a conspiracy to transport hashish or even another controlled substance." *Id.* at 92. "The evidence [was] just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime." *Id.* Thus, "[b]ecause the government did not prove that [the defendant] had knowledge of the hashish, had knowledge that [the alleged co-conspirators] intended to distribute or possess hashish, or purposefully intended to aid others in committing *the crime alleged*," the court reversed the defendant's conviction for insufficient evidence. *Id.* (emphasis added).

In another case closely analogous to the one before this Court, *United States v. Thomas*, 114 F.3d 403 (3d Cir. 1997), the court reversed a defendant's conviction for conspiring to possess and distribute, also citing insufficient evidence of the defendant's knowledge of the specific object of the conspiracy — to wit, drugs. The court said, "There can be no doubt that, when [the defendant] pursued his errand at the [hotel where he was told by an alleged co-conspirator to pick up a suspicious package,] he knew that he was somehow involved in an illicit activity. *More*, however, is required to uphold a criminal conviction for conspiracy." *Id.* at 405 (emphasis added). That is to say, though the evidence clearly showed that the defendant had entered into some type of conspiracy — and had even admitted as much —"[i]t [would have been] speculative to conclude that [the

defendant] knew that drugs were involved [in the conspiracy]." *Id.* at 406.

In contrast, the defendant in *United States v. Hernandez*, 31 F.3d 354 (6th Cir. 1994), "was present when [a co-conspirator] commented on the quantity of the cocaine in [a] duffel bag." *Id.* at 359. And, since "it [could not] be disputed that [the defendant] knew what was transpiring and that he took an active part by removing the duffel bag from the car and placing it next to his house," *id.*, we affirmed the defendant's conspiracy conviction.

Clearly, the emerging and consistent principle is that "conjecture and surmise regarding what a defendant may have intended or known is insufficient to support a conviction." *United States v. Coppin*, 1 F. App'x 283, 291 (6th Cir. 2001) (unpublished). In the matter before our Court, the evidence, when viewed in a light most favorable to the Government, essentially consists of the following: 1) Morrison knew both DeLoach and Saunders for many years; 2) the recorded conversation at the hotel revealed Morrison saying to Saunders and Gutierrez, "You stole my run"; 3) Morrison's assurance that he would return to the hotel with "some money" for Gutierrez; 4) Morrison's initiation of discussion regarding an unrelated drug bust in Westlake; 5) Morrison's concealment of the Chrysler in his garage; 6) Morrison's comment to Saunders that they were "clean"; 7) Morrison's admission that DeLoach paid him $40 for escorting Saunders to DeLoach's residence; 8) Saunders and DeLoach's exchange of money for the Chrysler keys in Morrison's presence; 9) DeLoach's comment that Morrison was to serve as his "head mechanic"; and 10) Morrison's misrepresentation regarding his place of residence.

Even when considered in a light most favorable to the Government, the totality of this evidence does not prove beyond a reasonable doubt that Morrison had knowledge of hidden *drugs*

(as opposed to any other contraband) in the Chrysler. The Government points to Morrison's comment to Saunders and Gutierrez that they "stole his run" as well as his comment to Saunders that they were "clean." Notably, however, the Government neglected to proffer any evidence as to *what* Morrison thought he was referring to when he uttered these statements. From this evidence, a reasonable jury could only conclude, at best, that Morrison's comments established that he knew *something* illegal was involved with the Chrysler. To conclude that these comments show, circumstantially or otherwise, Morrison's knowledge of hidden *drugs* — much less cocaine — is to engage in pure "conjecture and surmise," an exercise a rational trier of fact is not permitted to engage in.[5]

The same is true of the Government's observations that Morrison assured Gutierrez of returning with "some money"; that Morrison parked the Chrysler in a locked garage; that DeLoach paid Morrison $40 for escorting Saunders to DeLoach's residence; that DeLoach paid Saunders $960 in exchange for the Chrysler keys; that DeLoach stated to Morrison that he was to serve as his "head mechanic"; and that Morrison misrepresented his place of residence. Though the totality of the evidence, it bears repeating, admittedly shows that Morrison had knowledge of *some* illegal activity, what it fails to show is that Morrison knew the purpose of all this activity centered around drugs —

---

[5] In light of our conclusion that there is insufficient evidence that Morrison had knowledge of any sort of drug (as opposed to any other contraband), we need not determine whether, in this case, the Government must have proven that Morrison had knowledge of cocaine in particular. *Cf. United States v. Lopez-Medina*, 461 F.3d 724, 751 (6th Cir. 2006) (determining whether "[s]ufficient evidence also existed to establish that [the defendant] was trafficking cocaine, as opposed to methamphetamine or any other substance"); *United States v. Jenkins*, 345 F.3d 928, 942 (6th Cir. 2003) ("In order to sustain a conviction, the Government had to present evidence that [the defendant] knew that the express mail package contained cocaine base (as opposed to some other illegal substance or contraband)[.]").

the "essential object of the conspiracy" in which he was charged. *See Christian*, 786 F.2d at 211.

In fact, had law enforcement officers found any other type of contraband in the Chrysler — say, for example, stolen goods — the circumstantial evidence against Morrison is so expansive that the Government could just as easily argue that he had knowledge of that contraband. *See United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998) (noting that "the alternative explanations available for [the defendant's] conduct provide an equally plausible if not more plausible account than the government's theory, and the government cannot prevail on the basis of jury speculation"); *Wexler*, 838 F.2d at 92 (noting that "[t]he evidence is just as consistent . . . with a conspiracy to transport stolen goods, an entirely different crime"). Granted, the evidence need not foreclose every possible innocent explanation of Morrison's behavior, *see United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984), but, it is well established that "[w]here [two scenarios] are equally valid, [Morrison] is entitled to the one which favors [him]." *Miller v. United States*, 382 F.2d 583, 587 (9th Cir. 1967); *see also Saunders*, 325 F.2d at 843. The "web of inference is too weak" on these facts to permit any rational trier of fact, absent sheer speculation, to find *beyond a reasonable doubt* that Morrison had knowledge of the hidden *drugs*. *See Wilson*, 160 F.3d at 737 (internal quotation marks omitted).

The strongest evidence of Morrison's knowledge of the hidden drugs relates to his mentioning of an unrelated drug bust in Westlake. It is still difficult, nonetheless, to see how a brief mentioning of an *unrelated* drug bust would lead to a reasonable inference that Morrison knew cocaine was hidden in the Chrysler. While there is definitely something "fishy" about Morrison's motivation for initiating this discussion, we have consistently held that "the government's case will not succeed merely because there is something 'fishy' about the defendant's conduct." *Coppin*, 1

F. App'x. at 291. "It is not enough," we have said, "for [the evidence] merely to establish a climate of activity that reeks of something foul." *Wright*, 1993 WL 465164, at \*4 (quoting *United States v. Wieschenberg*, 604 F.2d at 332) (internal quotation marks omitted) (alteration in original).

Notwithstanding, since "charges of conspiracy are not to be made out by piling inference upon inference[,]" *Direct Sales Co.*, 319 U.S. at 711, we note that even assuming, *arguendo*, there had been sufficient evidence to infer Morrison's knowledge of the hidden drugs, there is even less evidence to infer his knowledge of the alleged co-conspirators' intent *to distribute* those drugs. *See United States v. Carter*, 20 F. App'x 258, 265 (6th Cir. 2001) (unpublished) ("[K]nowledge of the presence of illegal drugs . . . is not enough to establish a conspiracy [to distribute]." (internal quotation marks omitted)). The Government points out that Morrison "knew and associated with DeLoach for '12 to 15 years,' and [that] the video tape (sic) of the motel meeting reveals Morrison knew and was familiar with Saunders, as well."[6] (Appellee's Br. at 23). Yet, we have always held that "mere association is insufficient to 'sweep [a defendant] within the drag-net of conspiracy.'" *Coppin*, 1 F. App'x at 289 (quoting *Gibbs*, 182 F.3d at 422) (alteration in original).

Finally, although an intent to distribute may be inferred from knowingly possessing a large quantity of an illegal substance, *see United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (per curiam), the Government has not proven that Morrison had knowledge of the drugs in the first place — much less its quantum. *See United States v. Valerio*, 48 F.3d 58, 64 (1st Cir. 1995). This inference, moreover, does not *ipso facto* suggest that an intent to distribute may be inferred simply

---

[6] The Government appears to have made this argument to the jury also, in arguing that "[Morrison and Saunders did not] need to talk about cocaine. It [was] *understood*. That is how close they are." (J.A. at 1020) (emphasis added).

because drugs were stored in a large compartment (e.g., a gas tank or trunk). Thus, even presuming Morrison had knowledge of the hidden drugs, a jury would still have to make the unfounded inference that Morrison knew the drugs were of a large quantity (to, in turn, make the inference that Morrison knew the drugs were intended to be distributed). Surely, the many inferences that must be made to sustain Morrison's conviction violates the established principle that "charges of conspiracy are not to be made out by piling inference upon inference[.]" *Direct Sales Co.*, 319 U.S. at 711.

It is not within our role, to be sure, to determine whether *we* believe Morrison to be guilty of a conspiracy to possess with intent to distribute cocaine. That was the jury's role. And, "[a]lthough we respect the role of the jury, we also recognize that juries make mistakes." *Wright*, 1993 WL 465164, at *5. The sufficiency of the evidence standard requires this Court to correct these mistakes where the evidence "requires a leap of faith in order to support a conviction," *White*, 932 F.2d at 590, and no rational trier of fact could find guilt beyond a reasonable doubt.

The fact that the instant jury chose to disbelieve Morrison's exculpatory testimony does not (and should not) relieve the Government's constitutional burden of proving *its* version of events beyond a reasonable doubt. *Cf. United States v. Rahseparian*, 231 F.3d 1257, 1263 (10th Cir. 2000) ("False exculpatory statements cannot by themselves prove the government's case."); *United States v. Nusraty*, 867 F.2d 759, 765 (2d Cir. 1989) (same). An unbelievable exculpatory story has limited probative value "because the most probable and obvious inference to be drawn therefrom is that the defendant 'surmised he was implicated in [only] *some* sort of criminal activity.'" *Id.* at 1264 (quoting *Nusraty*, 867 F.2d at 765) (emphasis added).

Of course, this is not to say that Morrison's testimony may not be used as corroborative circumstantial evidence of his guilt. It clearly could. *See id.* at 1263. However, because the Government, not Morrison, carries the burden of proof throughout the entire trial, Morrison's unbelievable narrative cannot be used as a sword against him where the Government has not otherwise proffered sufficient evidence of his guilt. *Cf. United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir. 1976) ("[F]ailure to establish an alibi does not properly constitute evidence of guilt since it is the burden of the government to prove the complicity of the defendant, not the burden of the defendant to establish his innocence."); *United States v. Robinson*, 602 F.2d 760, 762 (6th Cir. 1979) ("The [alibi] defense can easily backfire, resulting in a conviction because the jury didn't believe the alibi rather than because the Government has satisfied the jury of the defendant's guilt beyond a reasonable doubt . . . .").

Or else, we would be effectively reducing (or shifting) the Government's burden where a defendant chooses to exercise his constitutional right to testify and offer a defense at his own trial. This would, in turn, establish a precedent whereby defendants, irrespective of the insufficiency of the Government's evidence, would be forced into an untenable conundrum: either to exercise their constitutional right to testify (with the attendant possibility that the Government's burden would be reduced or shifted) or to not exercise their constitutional right to testify (with no opportunity of explaining their version of events to the jury). Therefore, as this Court has before, we must conclude that "'falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's

innocence as it is to the Government's theory of guilt.'" *United States v. McDougald*, 990 F.2d 259, 263 (6th Cir. 1993) (quoting *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975)). To do otherwise would be to effectively insulate jury convictions from a meaningful sufficiency-of-the-evidence review whenever a defendant has chosen to exercise his constitutional right to offer a testimonial defense.[7]

Accordingly, since the totality of the evidence — circumstantial or otherwise — fails to reasonably show that Morrison had knowledge of either (1) the hidden drugs in the Chrysler (as opposed to any other contraband) or (2) a conspiracy to distribute those drugs, we reverse Morrison's conviction for conspiring to possess with intent to distribute cocaine.

## C. Application to Morrison's 18 U.S.C. § 2 Conviction

Morrison next challenges his conviction for "aiding and abetting a conspiracy to possess with intent to distribute cocaine." 18 U.S.C. § 2 provides that anyone who "aids, abets, counsels, commands, induces or procures" in the commission of an offense against the United States is punishable as a principal. The Government must offer proof that a defendant had knowledge of the underlying substantive offense (i.e., conspiracy to possess with intent to distribute). *See United States v. Hill*, 55 F.3d 1197, 1201 (6th Cir. 1995) ("[T]he defendant must have knowledge of the general scope and nature of the illegal [activity] and awareness of the general facts concerning the

---

[7] This realization is why our Court has reversed jury convictions even where a defendant has proffered an unpersuasive exculpatory story. *See, e.g.*, *Coppin*, 1 F. App'x at 292 (reversing on insufficient evidence even though "[d]efendant's explanations . . . may be unconvincing"); *Wright*, 1993 WL 465164, at *3 (reversing on insufficient evidence even though defendant "claimed that he did not smell the marijuana because he had a cold and was on strong medication").

venture.").

The Government, as we have repeatedly said, simply has not proven beyond a reasonable doubt that Morrison had knowledge of the hidden drugs, much less of a conspiracy to distribute those drugs. At best, it has only shown that Morrison had knowledge of *some* illegal activity. However, "[a] generalized belief or suspicion that something illegal is going on is not sufficient for a rational jury to find . . . aiding and abetting . . . ." *See United States v. Pena*, 983 F.2d 71, 72 (6th Cir. 1993). For this reason alone, no jury could reasonably conclude that Morrison knowingly aided and abetted in a conspiracy to possess with intent to distribute cocaine.

Accordingly, we reverse Morrison's conviction of aiding and abetting a conspiracy to possess with intent to distribute cocaine.

### III.

For the foregoing reasons, we **REVERSE** the jury conviction of Morrison for (1) conspiracy to possess with intent to distribute cocaine and (2) aiding and abetting a conspiracy to possess with intent to distribute cocaine.

**GEORGE C. STEEH, District Judge, dissenting.**

I respectfully dissent. Because I believe ample evidence was presented to infer Morrison's knowing participation in the drug conspiracy in this case, I would affirm the jury's guilty verdicts.

A criminal conspiracy conviction may be supported solely by circumstantial evidence. *United States v. Crayton*, 357 F.3d 560, 573 (6th Cir.) (quoting *United States v. Sullivan*, 903 F.2d 1093, 1098 (7th Cir. 1990)), *cert. denied*, 124 S.Ct. 2857 (2004). Once the existence of a criminal conspiracy is proven, "evidence connecting a particular defendant to the conspiracy 'need only be slight.'" *United States v. Harris*, 397 F.3d 404, 414 (6th Cir. 2005) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)).

The evidence presented to the jury here included: (1) the undisputed existence of a December 14, 2003 conspiracy between Saunders and DeLoach to transport 1.5 kilograms of cocaine with a street value of $150,000.00 from Los Angeles to Cleveland for a price of approximately $1000.00; (2) the drug transporters, Saunders and Gutierrez, remained in phone contact with DeLoach during the trip, and were eventually directed by DeLoach to contact Morrison and were sent to a Cleveland hotel; (3) Morrison met Saunders and Gutierrez at the hotel on December 16, 2003 at DeLoach's direction; (4) Morrison commented to Saunders that Saunders "just stole my run," that he could have used the money, and that he could have made the delivery in less time than it had taken Saunders; (5) while at the hotel, Morrison offered to Gutierrez to retrieve his payment from DeLoach, and to return to the hotel with the money; (6) with Saunders driving the rental car from the hotel and Morrison driving his own vehicle, Morrison cautioned Saunders to keep his speed up and not "hit your lights" to avoid a police traffic stop; (7) Morrison took control of the California rental car and

parked it in his own garage, positioning the gas tank of the car (which had contained the cocaine) to the rear of the garage, then locked the garage door; (8) Morrison then drove Saunders to DeLoach's house using his own vehicle, while commenting to Saunders that police in Cleveland Heights are a problem but the two of them are now "clean" and don't need to worry; (9) Morrison watched as Saunders handed the rental car keys to DeLoach in exchange for $960.00, with DeLoach telling Saunders "You done good, you didn't get stopped"; (10) DeLoach paid Morrison $40.00; (11) DeLoach, anticipating that the cocaine must be removed from the rental car's gas tank, told Morrison that he didn't need to go to work the next day because Morrison was going to be DeLoach's "main mechanic"; and (12) Morrison falsely gave arresting officers his mother's address as his own instead of his true address, where he had parked the rental car. This circumstantial evidence was not required to "remove every reasonable hypothesis except that of guilt." *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)).

Given the significant value of the drugs being delivered, a fair common sense inference arises that Morrison would not have been given the important role of directing and securing delivery of the drugs to DeLoach without Morrison having knowledge of the nature of the contraband. Also given Morrison's detailed knowledge of the elaborate plans surrounding the delivery, common sense allows the fact-finder to infer Morrison's knowledge that the goods were illegal drugs. Viewing the evidence presented to the jury "in the light most favorable to the prosecution, *any* rational trier of fact" could have convicted Morrison on the drug conspiracy and aiding and abetting charges by finding beyond a reasonable doubt that: (1) Morrison was aware of the object of Saunders' and DeLoach's drug conspiracy and voluntarily associated himself with its purpose, *United States v.*

*Harris*, 397 F.3d 404, 414 (6th Cir. 2005) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999); and (2) Morrison participated in the venture and sought to make it succeed, *United States v. Ward*, 190 F.3d 483, 487 (6th Cir. 1999). *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).