**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  14a0759n.06

Case No. 13-2067

**FILED**

Oct 02, 2014

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ROLAND KALECHI UWAZURIKE, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE:  GUY, ROGERS, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant-Appellant, Roland Kalechi Uwazurike, was indicted in 2008 on two drug-conspiracy counts under 21 U.S.C. §§ 841 and 846.  The counts arose from events in May and July 2007 in which the government alleged he knowingly and intentionally entered into an agreement to transport more than 500 grams of heroin intended for distribution.  In 2009, a jury convicted Uwazurike on both counts.  He moved for a judgment of acquittal or for a new trial.  The district court denied his motion.  He now appeals, arguing that the evidence presented against him at trial was insufficient to sustain a conviction and that prosecutorial misconduct violated his right to due process by prejudicing the jury against him.  For the reasons that follow, we **AFFIRM** the district court's denial of the motion.

## I. BACKGROUND

### A. Factual Background

*1. May 2007 Conspiracy – Delivery to Bush*

Defendant Uwazurike met Joanna Bush in 2000, and the two began an affair that lasted, off and on, for several years. In early 2007, Uwazurike told Bush he was having a package delivered to her house in Howell, Michigan. When the package arrived, Bush became curious, and called Uwazurike to tell him she was going to open it. He seemed unconcerned, and she opened the shipping bag. It contained several children's books. Bush examined them, and finding nothing unusual, gave them to Uwazurike when he arrived at her home later that day. Uwazurike continued using Bush's address to receive packages. She believed each of these also contained books because she felt them through the shipping bags. Bush estimates she received five or six packages for Uwazurike in the following months.

In May 2007, the United States Drug Enforcement Administration ("DEA") received a message from the Narcotics Control Bureau of India ("Bureau") that the Bureau had intercepted a DHL package destined for the United States.[1] The package contained children's books. The books' covers had been modified, and over 500 grams of heroin were pressed and sealed inside. The package was addressed to Bush's residence in Michigan. The DEA decided to attempt a controlled delivery of the package. Agents opened the shipping bag, removed most of the heroin from the book covers, and repackaged them in a shipping box. The box contained a hidden device that would signal when it was opened.

On May 30, 2007, the DEA attempted to deliver the package at Bush's residence. Uwazurike was tracking the package and called to notify her it was at her house. Bush did not

---

[1]The Bureau declined the DEA's request to investigate the source of the shipment; the sender has not been identified.

return home in time, and an undercover agent left a delivery tag on the door. Uwazurike told Bush to refuse delivery. She wrote "return to sender" on the door tag, replaced it, and called Uwazurike to let him know. But when she did, he yelled at her, telling her "we want the package," and instructed her to call DHL and request delivery. (R.52: Trial Tr., 602.) Bush called DHL, and the undercover agent returned to her residence. Bush signed for the box.

That evening, the DEA executed a search warrant at Bush's house. The box was still unopened on the kitchen counter. Bush agreed to cooperate with the government and allowed them to record her phone calls with Uwazurike. Shortly after 10:00 p.m., she called and told him that this time, the shipment had come in a box, not a bag. Uwazurike was concerned and, after asking her more about the box, instructed her to wait while he "ask[ed] the guy." (R.60: Ex. 7A (First Call Tr.), 820-21.) Uwazurike then called a number in India. He then called Bush, telling her, "take it right back . . . it's nobody's shit." (R.60: Ex 8A (Second Call Tr.), 822.) Uwazurike then phoned the number in India again, and spoke with someone for about fifteen minutes. When he spoke with Bush a third time, he told her to leave the package in her garage and bring it to him in the coming days.

By that time, however, the DEA agents had taken the box with them, and Bush told Uwazurike she had sent the package back. Uwazurike was upset, and told her, "[t]hey can't find it. They are mad." (R.52: Trial Tr., 617.) The following day he called her again, telling her not to worry; the package had been located.

2.      *June 2007 Conspiracy – Delivery to Osigwe*

Emmanuel Osigwe immigrated to the United States from Nigeria in 2002. He and Uwazurike (also from Nigeria) soon became friends; for a time, Osigwe even lived with Uwazurike and his family at their home in Detroit, Michigan. When the family moved, Osigwe,

Uwazurike, and Uwazurike's cousin began living together. Osigwe also kept a key to the Detroit residence and looked after it for the family.

In June 2007, Uwazurike arranged for a package to be delivered to the empty family home in Detroit and asked Osigwe to be on hand to receive it for him. Like the shipment Bush received, this package was also from India. U.S. Customs and Border Protection ("Customs") selected the package for inspection when it reached the United States and found that it contained books with 243 grams of heroin pressed in the covers. Customs contacted local Immigration and Customs Enforcement ("ICE") officers, who arranged for a controlled delivery. ICE agents took the books out of their FedEx shipping bag and placed them in a box with a device to signal when it was opened.

Uwazurike tracked the package and told Osigwe to be at the house on June 6, 2007. Uwazurike called and received several calls from a number in India on the same day. Osigwe missed the first delivery attempt. On June 7, he waited until he had to leave for work, but then left and missed the second delivery attempt. Uwazurike told Osigwe to call FedEx to schedule the next attempt for the following day.

On the morning of June 8, before Osigwe left the residence he shared with Uwazurike to receive the FedEx delivery, a woman came to the door with books in hand. She was speaking with Uwazurike on her cell phone, and put him on speakerphone. He told Osigwe to take the books from her and bring them to him with the FedEx package once it arrived. Osigwe took the books from the woman and proceeded to the empty residence in Detroit. An undercover officer delivered the FedEx package to Osigwe there. ICE agents arrested him as he left the house with the package.

Agents found the books Osigwe had received from the woman that morning in his car. These, too, contained heroin in the covers–442 grams. In the hour following Osigwe's arrest, Uwazurike tried to contact him six times. He then called a number in India and spoke with someone for ten minutes. Afterward, Uwazurike hired an attorney for Osigwe.

### 3. Search of Uwazurike's Trash and Home

Following the deliveries to Bush and Osigwe, the DEA conducted trash pulls at Uwazurike's family residence. They found nothing of evidentiary value regarding drugs or drug trafficking. In February 2008, agents executed a search warrant at his home. They found the phone Uwazurike had used to call Bush and parties in India in May 2007 and several receipts for wire transfers to India. The DEA agents did not find controlled substances, drug paraphernalia, or books similar to those intercepted in the May and June 2007 deliveries.

## B. Procedural History

### 1. Indictments

In February 2008, a grand jury charged Uwazurike with one count of conspiracy to possess with intent to distribute heroin under 21 U.S.C. §§ 841 and 846 for the May 2007 delivery to Bush's residence. In March 2008, the grand jury issued a superseding indictment, adding a second drug-conspiracy count for the June 2007 delivery received by Osigwe.

### 2. Osigwe's Plea

The government charged Osigwe with possession of heroin pursuant to his June 2007 arrest. At the time of his arrest, Osigwe stated he did not know what was in the books or the package he received for Uwazurike. Nevertheless, he entered into plea negotiations with the government, and the government subsequently introduced signed plea and cooperation agreements into evidence. The plea agreement stipulated that Osigwe knew he was transporting

controlled substances inside the books. The government also submitted testimony from Osigwe stating he understood his advisory Sentencing Guidelines range was 46-57 months, and that the government had made no promise of a lower sentence. These items remained in evidence during the seventeen months leading up to Uwazurike's trial.

    *3.    Trial*

In May 2009, Uwazurike's trial for two drug-conspiracy counts began. In its opening statement, the government told the jury that Osigwe, one of its witnesses, had accepted responsibility for his part in the conspiracy and had entered a guilty plea. Then, on the second day of trial, the government produced—for the first time—a transcript of Osigwe's plea hearing.

The transcript revealed that, at the hearing, Osigwe had again stated that he knew nothing about the package or books. The judge presiding over the hearing did not accept his plea and suggested to the government that it consider dropping the charges against Osigwe if it found his statements truthful. The charges against Osigwe remained in place through the time of Uwazurike's trial.

At trial, defense counsel raised the issue of Osigwe's plea on cross-examination and in closing arguments to clarify that Osigwe had not, in fact, pleaded guilty, and that he had disclaimed any knowledge that he had been transporting drugs. The district court also issued instructions to the jury to consider carefully Osigwe's testimony in light of his ongoing negotiations with the government.

After a four-day trial, the jury convicted Uwazurike on both drug-conspiracy counts. Uwazurike failed to appear for his sentencing hearing in December 2009; he remained a fugitive until he returned to court in March 2013. The district court sentenced Uwazurike to 70 months'

imprisonment, and denied his motion for judgment of acquittal and for a new trial. Uwazurike timely appealed.

## II.    ANALYSIS

### A.    Sufficiency of the Evidence

Uwazurike's first claim on appeal is that there was not sufficient evidence to support a drug-conspiracy conviction against him. We disagree. Viewed in the light most favorable to the prosecution, there was sufficient evidence at trial for a reasonable jury to find Uwazurike guilty on both drug-conspiracy counts. Accordingly, we affirm the district court's denial of Uwazurike's motion for a judgment of acquittal.

### 1.    Standard of Review

We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014). "When reviewing convictions for sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt.'" *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (quoting *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### 3.    Discussion

The jury convicted Uwazurike of two counts of conspiracy to possess heroin with intent to distribute under 21 U.S.C. §§ 841 and 846. To establish a drug conspiracy, the government must show the parties: (1) had an agreement to violate drug laws; (2) knew about and intended to join that conspiracy; and (3) ultimately participated in the conspiracy. *United States v. Pritchett*, 749 F.3d 417, 431 (6th Cir. 2014).

On appeal, Uwazurike targets the second requirement, arguing that the government did not present sufficient evidence that he knew and intended to join a *drug* conspiracy. If the defendant does not know the "ultimate goal" of the scheme in question, then he does not possess the requisite knowledge to be convicted of conspiracy. *United States v. Sliwo*, 620 F.3d 630, 633-34 (6th Cir. 2010) (discussing *United States v. Morrison*, 220 F. App'x 389 (6th Cir. 2007)). Thus, if Uwazurike did not know he was participating in an agreement regarding illegal drugs, then he could not have been found guilty of conspiracy under § 846.

Uwazurike relies heavily on the facts of two cases decided by this Court. First, in *Sliwo*, the government presented evidence that defendant Sliwo had orchestrated transport and served as a lookout for a series of marijuana deals, but had no recorded conversations or surveillance evidence. *Id*. Sliwo was convicted. This Court reversed, stating that while there was evidence Sliwo was "engaged in a scheme" with some sort of criminal purpose, that was not sufficient to demonstrate that he "knew that this conspiracy involved marijuana as opposed to stolen electronic equipment, counterfeit handbags, [etc.]." *Id*. at 636.

Similarly, in *Morrison*, the defendant was recorded discussing "runs" with his alleged co-conspirators and allowed them to conceal a vehicle containing cocaine in his garage. 220 F. App'x at 395. Again, this Court reversed, finding that the evidence proffered "d[id] not prove beyond a reasonable doubt that Morrison had knowledge of *drugs* (as opposed to any other contraband) in the [vehicle]." *Id*.

Uwazurike contends that his situation parallels Sliwo's and Morrison's. Despite searching his home and trash, the government did not find Uwazurike in possession of drugs. None of the government's surveillance of his movements or communications contained observations of him transporting or possessing drugs. Neither Bush nor Osigwe testified that

Uwazurike had asked them to receive controlled substances; in fact, at no time during the government's recorded conversations does he explicitly speak about drugs. He allowed Bush to open one of the packages, which he claims would "defy logic" had he known about the heroin. (Appellant Br. 24.) Moreover, even if he knew the books contained contraband, he reasons, that does not prove he knew the contraband was *drugs*—knowledge necessary to prove he intended to carry out the conspiracy at hand.

While Uwazurike can point to evidence in his favor, that is not enough for this Court to overrule the jury and the district court. We have emphasized that "[a] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (quoting *United States v. Soto*, 716 F.2d 989, 991 (2d Cir. 1983) (internal quotation marks omitted)). When reviewing a claim of insufficient evidence, an absence of direct evidence is not dispositive; "[c]ircumstantial evidence alone is sufficient to sustain a conviction. . . ." *Id.* (citing *United States v. Stone*, 748 F.2d 361, 362-63 (6th Cir. 1984)); *see also United States v. Degan*, 229 F.3d 553, 556 (6th Cir. 2000). The government must convince the jury beyond a reasonable doubt; it does not have to disprove "every reasonable hypothesis except that of guilt." *Vannerson*, 786 F.2d at 225 (citing *Stone*, 748 F.2d at 362-63).

At trial, the government presented significant—if circumstantial—evidence to support its conspiracy charges against Uwazurike.[2] Unlike Sliwo or Morrison, Uwazurike had control over the target of the conspiracy: the heroin. Over the previous months, Uwazurike had wired

---

[2]The district court provided an accounting of the evidence presented at trial on both drug-conspiracy counts, including eleven witnesses, three recorded conversations, the books containing heroin and their packaging, lab reports, telephone records, and Osigwe's plea agreement. (R.33 at Page ID #112-14.)

thousands of dollars to India using aliases. He arranged for delivery of the packages to third parties, rather than providing his own name or address. He tracked the packages online and made multiple calls to parties at both ends to confirm delivery.

Contrary to Uwazurike's contention that he was nonchalant about the packages' contents, the government presented a recorded conversation in which he was alarmed when Bush asked to open the box delivered in May 2007:

RU: In a box, it came in a box?

JB: (unintelligible) box, (unintelligible) thought it was donuts.

RU: Like that?

JB: Yeah it came in a box, looks like a dozen donuts.

RU: Uh-huh.

JB: What the hell is in the box.

RU: I don't know about that, don't you open it. Did you open it?

JB: No I didn't open it. Can I open it?

RU: No. Don't open it.

JB: No I can't open it.

RU: Let me ask. I'm going to ask the guy.

(R. 60-4 at Page ID #820-21.) Uwazurike then immediately made a series of calls to India and to Bush before telling her what to do with the package.

Uwazurike's level of participation in these conspiracies is also distinguishable from the roles Sliwo and Morrison played in theirs. Sliwo and Morrison were both peripheral parties who followed the direction of others and were not entrusted with the contraband in question.

Uwazurike, by contrast, personally coordinated an ongoing, consistent pattern of payment and shipments to and from his unidentified co-conspirators in India.[3]

The essential inquiry is not whether this Court is convinced of Uwazurike's guilt, but whether "*any* reasonable trier of fact" could have found him guilty on the evidence presented. *Jackson*, 443 U.S. at 319. While this Court reviews the content of his appeal de novo, we must be careful not to "substitute our judgment for that of the jury." *U.S. v. Lewis*, 69 F. App'x 748, 752 (6th Cir. 2003) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) (internal quotation marks omitted)).

As discussed above, at trial, the government presented the jury with significant circumstantial evidence that Uwazurike knowingly orchestrated deliveries of heroin on both occasions in question. The jury also heard testimony from multiple law-enforcement officers and laypersons discussing Uwazurike's behavior in detail. Viewed in the light most favorable to the prosecution, the record shows that a reasonable trier of fact could find Uwazurike guilty beyond a reasonable doubt on the evidence presented. We therefore affirm the district court's denial of his motion for a judgment of acquittal.

### B.    Prosecutorial Misconduct

Uwazurike alleges three instances of prosecutorial misconduct that he claims prejudiced the jury against him at trial: (1) the government's failure to produce favorable evidence—the transcript of Osigwe's plea hearing—in a timely fashion (a *Brady* violation); (2) a statement insinuating Osigwe's guilt by referring to personal opinion and facts not in evidence; and (3) the

---

[3]In both *Sliwo* and *Morrison*, this court highlighted that the conspiracies used vehicles to transport their contraband. *See Sliwo*, 620 F.3d at 636; *Morrison*, 220 F. App'x at 395. In Uwazurike's case, the contraband in question was capable of fitting into a book cover without discovery. This limits the possibilities regarding the type of contraband significantly more than Sliwo's van or Morrison's car, which could be transporting any number of things.

government's inconsistent portrayal regarding the benefits Osigwe would garner from his agreement to testify. None of these issues rises to the level of prosecutorial misconduct warranting a new trial.

### 1. Standard of Review

We review denial of a motion for a new trial under an abuse-of-discretion standard. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). "The district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Dado*, 759 F.3d 550, 559 (6th Cir. 2014) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007) (internal quotation marks omitted)). Generally, when analyzing a claim of prosecutorial misconduct, we consider "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Wettstain*, 618 F.3d 577, 588 (6th Cir. 2010) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)).

When the prosecutorial conduct in question is an alleged *Brady* violation, this Court still applies an abuse-of-discretion standard, but with a modification: it reviews "the district court's determination as to the existence of a *Brady* violation. . . *de novo*." *Dado*, 759 F.3d at 559. "In other words, we give considerable deference to the district court's factual findings and factual conclusions, but we review *de novo* the district court's conclusions about the legal significance of those findings." *Id*.

- 12 -

2.    *Discussion*

i.    *Brady* Violation

Uwazurike claims that the government failed to disclose favorable evidence in a timely fashion, and that this delay prejudiced him at trial. However, the government's production of the evidence, while delayed, allowed sufficient time for Uwazurike to receive a fair trial.

Following his arrest for drug possession in 2007, Osigwe stated that he did not know about the drugs in the package or books he carried for Uwazurike. Osigwe soon entered plea negotiations with the government. As a result of those negotiations, the government entered into evidence both testimony and signed agreements indicating Osigwe had pleaded guilty to knowingly conspiring with Uwazurike to transport heroin. The transcript of Osigwe's plea hearing was sealed. On the second day of Uwazurike's trial in 2009, the government released the transcript from the hearing. This transcript contained Osigwe's statements that he did not, in fact, know about the drugs.

Uwazurike asserts that the hearing transcript was relevant to his trial for both exculpatory and impeachment purposes, and that he was prejudiced by its late disclosure. Under the *Brady* doctrine, when the prosecution fails to disclose material evidence favorable to the defendant, that failure violates the defendant's right to due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The same is true of evidence that would have impeachment value regarding a witness whose "reliability. . . may. . . be determinative of guilt or innocence." *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal quotation marks omitted)). However, "[i]f previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs 'unless the defendant has been prejudiced by the delay in disclosure.'" *Id*. (quoting *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986)).

- 13 -

Osigwe testified at his plea hearing that he did not know there were drugs in the package or books. Uwazurike argues that the hearing transcript demonstrated that he did not have an agreement with Osigwe to possess or distribute heroin, and thus directly undermined the drug-conspiracy charge. The transcript, along with Osigwe's plea agreement, also showed Osigwe may not be a reliable witness. Because there were few witnesses at trial who directly interacted with Uwazurike during the events in question, Osigwe's credibility was a key part of the case against Uwazurike. Given the transcript's importance to Uwazurike's defense, he argues the delay in receiving it prejudiced him at trial.

Because the *Brady* doctrine is premised on the right to due process, we have recognized that the "question of whether a delay [in disclosing evidence] causes prejudice is really just a type of inquiry into materiality." *Joseph v. Coyle*, 469 F.3d 441, 471 n.21 (6th Cir. 2006) (citing *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998)). Importantly, evidence is material if it impacts a determination of defendant's guilt or innocence, not his ability to prepare for trial. *United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976); *see also Joseph*, 469 F.3d at 475 n.23. We must therefore determine whether the omission of the transcript deprived Uwazurike of a fair trial; otherwise, "there [is] no constitutional violation requiring that the verdict be set aside." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (quoting *Agurs*, 427 U.S. at 108) (alteration in original).

The delay in the government's production of the transcript did not violate Uwazurike's rights. The day the government disclosed Osigwe's hearing transcript to the defense, the court took a half-hour recess and adjourned at 1:00 p.m. until the following morning. The defense addressed Osigwe's hearing transcript at trial, "vigorously argu[ing] to the jury that Osigwe was not a credible witness," cross-examining him during his testimony, referring to his plea hearing

during closing arguments, and obtaining an instruction to the jury to examine Osigwe's testimony considering that such testimony might procure his freedom. (R. 33 at Page ID 115-16.)

Overall, receipt of the hearing transcript during trial did not prejudice Uwazurike at trial, and does not support an order of reversal or for a new trial.

### ii. Statements to the Jury

#### a. Personal Opinion/Facts Not in Evidence

During its closing arguments, defense counsel told the jury that Osigwe would "walk[] out the door" because "the judge" did not believe Osigwe knew about the drugs in the package or books he had received on Uwazurike's behalf. (R. 53 at Page ID 721.) On rebuttal, the prosecutor countered:

> One other thing I want to make clear about Mr. Osigwe and the whole guilty plea. A lot of that is really technical sort of lawyerly stuff, and [the presiding] Judge . . . is Mr. Osigwe's judge and I guarantee you that if you knew [the presiding judge], and everybody in his courtroom who knows him would agree with me, nobody is going to tell him what to do.

(*Id.* at Page ID 741.)

When deciding whether allegations of prosecutorial misconduct warrant a new trial, we apply a two-part test: first, we "consider whether the prosecutor's conduct and remarks were improper," and then we determine "whether the impropriety was flagrant and thus warrants reversal." *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)) (internal quotation marks omitted). A prosecutor's remark is

improper if it refers to facts not in evidence or the prosecutor's personal opinion. *See, e.g., United States v. Galloway*, 316 F.3d 624, 632-33 (6th Cir. 2003) (finding prosecutor's remark expressing his personal opinion to the jury improper); *Macias v. Makowski*, 291 F.3d 447, 453 (6th Cir. 2002) (finding prosecutor's statements to jury regarding facts not in evidence improper).

Here, Uwazurike argues that the government's reference to the character of the judge presiding over Osigwe's plea hearing is the kind of personal knowledge or evidence that cannot properly be expressed to the jury. We agree that the statement was improper, relying as it does on both the prosecutor's personal opinion and character "evidence" not established at trial. However, Uwazurike does not explain how the statement was flagrant, and to find misconduct we must find a statement both improper and flagrant.

To establish if an improper remark was flagrant, we evaluate "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Macias*, 291 F.3d at 452 (citing *Carter*, 236 F.3d at 783 (internal quotation marks omitted)).

Uwazurike does argue that the prosecutor's statement was misleading regarding the status of Osigwe's plea. As discussed above, the judge overseeing Osigwe's plea hearing had encouraged the government to reconsider its agreement if it believed Osigwe was truthful in claiming he did not know about the drugs. This contradicts the notion that Osigwe was going to be punished for his actions in June 2007.

It is well established that a jury may find a prosecutor's statements at trial more influential than it would those of other parties. *United States v. Young*, 470 U.S. 1, 18-19

(1985). Because the jury may be inclined to value the word of the prosecutor over the evidence presented to it, the jury could make its decision on an improper basis. *Id.* at 18-19 ("[T]he prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

However, the prosecutor's statement was limited to one aspect of the overall case against Uwazurike. It was not related to his guilt or innocence, but to the potential terms of a witness's plea agreement. Further, the statement was made in the context of a debate over that very issue. It came directly in response to defense counsel's closing statements regarding Osigwe and his plea. The district court gave the jury instructions to weigh carefully Osigwe's outstanding plea in evaluating his credibility as a witness. The question is not whether the statement could potentially be misleading, but whether it "tended to mislead" or "prejudice" the jury—in context, this was not the case.

Even if the statement proved misleading, the other elements of the test are not in Uwazurike's favor. The statement was isolated, not extensive. It was not deliberate, but rather an off-the-cuff observation in response to defense counsel's closing statement. Moreover, there was ample evidence against Uwazurike that had nothing to do with the statement or its contents. Accordingly, this statement cannot form the basis of a reversal or new trial.

b.  Inconsistent Positions Regarding Plea Agreement

Uwazurike contends that the government committed prosecutorial misconduct when it presented two competing views of Osigwe's role in the June 2007 heroin delivery. During the opening of Uwazurike's trial, the government stated that Osigwe "took responsibility" for his possession of the books and had pleaded guilty. (R. 92 at Page ID 530.) By closing arguments, the government "adopted the theory that Osigwe had no knowledge and had been taken

advantage of in some way" when Uwazurike "exploited Osigwe's trust and friendship." (Appellant Br. 41.) Uwazurike maintains that adopting these inconsistent positions was improper for various reasons, none of which is persuasive.

Uwazurike first claims that the prosecution "improperly bolstered" Osigwe's testimony by "emphasizing that he expected to serve a lengthy prison sentence for his actions," even though the government was reconsidering his plea. (*Id*. at 42.) This is neither consistent with the record nor with Uwazurike's other arguments. While the government may have opened with the statement that Osigwe would face punishment for his actions, by Uwazurike's own description, this was debated rather extensively before the jury at trial, and was contradicted by the government in closing arguments.

Uwazurike also suggests that "the government's actions constituted an attempt to influence the jury to convict for reasons other than sufficient proof." (*Id*.) He claims that presenting evidence that Osigwe faced a prison sentence for acting on Uwazurike's requests "may have made it much more difficult for [the] jury to conduct the proper analysis of the evidence." (*Id*. at 42-43.) But the jury heard ample argument and evidence from both sides regarding the reliability of Osigwe's testimony. Further, the court instructed the jury not to base its decision on "sympathy" for Osigwe. (R. 57 at Page ID 777-78.)

Uwazurike argues that the timing of the government's disclosure of Osigwe's plea transcript was "solely within the government's control," and that the government "suppressed the evidence until it was too late." (Appellant Br. 43.) Under *Brady*, the motive behind a delayed disclosure of evidence is irrelevant. *Brady*, 373 U.S. at 87. As for whether the government's disclosure was "too late," we have already determined that Uwazurike's *Brady* claim fails for numerous reasons.

Finally, Uwazurike contends that the government's decision to continue prosecuting Osigwe after his plea hearing "provided jurors an impression that the requisite standard of proof may have been lower than it actually [was]." (Appellant Br. 43.) Uwazurike fails to explain precisely how this is the case, but as it relates to his general argument that Osigwe's guilt and punishment were tied into his credibility, we have already determined that the defense adequately presented this to the jury at trial.

The government's behavior and statements to the jury at Uwazurike's trial did not constitute prosecutorial misconduct. The government delayed discovery of Osigwe's plea hearing transcript until the second day of trial, but defense counsel had adequate time to review the transcript and argue based on its contents. While the prosecutor's statement regarding Osigwe's plea-hearing judge was improper, it was not flagrant. It did not mislead, it was isolated, it was made accidentally, and the evidence against Uwazurike was strong. Finally, the government may present its case in the manner it wishes; there was no improper conduct in its arguments to the jury. Accordingly, the prosecutor's actions did not prejudice the jury and the district court did not abuse its discretion in refusing to order a new trial.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.