NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0318n.06

Case No. 23-5426

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | **FILED** |
|  | ) | Jul 23, 2024 |
| v. | ) | KELLY L. STEPHENS, Clerk |
|  | ) | |

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TONYA RAE SAINE fka Tonya Rae Bowles,

    Defendant-Appellant.

**FILED**
Jul 23, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

O P I N I O N

Before: BOGGS, COOK, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** A jury convicted Tonya Saine for making a false statement to acquire firearms and transferring two firearms to her husband knowing that he was a felon barred from possessing firearms. She asks us to reverse her conviction for various reasons. Finding none convincing, we AFFIRM.

## I.

### A.

On September 4, 2021, Tonya Saine, then Tonya Bowles, allegedly bought two guns for Ricco Saine, whom she married less than a week later. She bought a Springfield Armory Saint rifle and a Walther PK .380 pistol from Smoky Mountain Guns & Ammo. Store cameras captured Saine's purchase on video. It shows Saine and Ricco approach the counter, pointing to multiple guns and appearing to discuss them. They asked to see two rifles from behind the counter, and an employee, Lacey Hurst, handed the first gun to Saine, who then handed it to Ricco. Hurst handed

the second gun directly to Ricco, who later handed it to Saine. Fast forward a few minutes, and Hurst unboxes a rifle to hand to Saine. But Saine gestures toward Ricco as if to say that he should hold it, but Ricco declines. So Saine receives the gun then immediately hands it to Ricco, who examines it. Saine and Ricco then repeat this process shopping for pistols—Ricco points to certain handguns, Hurst brings them out from behind the counter, and Ricco and Saine take turns handling the weapons, with Ricco testing their weight and grip. At check out, Saine completed paperwork, a required ATF Form 4473, which allows the seller to do a background check.[1] Saine completed the paperwork electronically then left the store with Ricco carrying the guns.

A few days later, while investigating possible firearms violations by Ricco, an ATF task force officer visited the home of Ricco and Saine. Saine told him she knew Ricco was a felon and that she owned three firearms. Roughly a month later, police arrested Ricco. They searched his phone and found a text message from Saine on September 12—a little over a week after their trip to Smoky Mountain and a few days after their marriage—saying, "I've got your gun and stuff in the house." R.189, Trial Tr., pp.72–74, PageID 1661–63. Ricco responded, "K." *Id.* at p.74, PageID 1663. Federal authorities later arrested Saine.

**B.**

A grand jury charged Saine with violating 18 U.S.C. § 922(a)(6) by making a false statement to acquire firearms and § 922(d)(1) by transferring two firearms to her husband knowing

---

[1] Question 21.a of the Form asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form[?]" R.246-1, ATF Form 4473, p.1, PageID 2813. The Form also requires the buyer to make several certifications: "I certify that my answers . . . are true, correct, and complete," "I understand that answering 'yes' to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law," and "I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law." *Id.* at p.2, PageID 2814.

he was a felon. The grand jury also charged Ricco with various offenses, but the cases were severed for trial.

Before trial, Saine moved to exclude any conversations, including text messages, with her husband under the marital privilege. The district court denied these motions as it pertained to the texts because they concerned joint illegal activity, so the marital privilege did not bar their admission.

Then came trial. The government introduced evidence including the video described above, photographs from the video, text messages between Saine and Ricco, and witness testimony linking Ricco to the guns.[2] The jury found Saine guilty of both offenses. Saine moved for a new trial, which the district court denied.

Saine's case proceeded to sentencing. An initial presentence report calculated Saine's Guidelines range using a total offense level of 18, including one enhancement, and a criminal history category of I. After considering objections, the court applied another enhancement, which increased Saine's total offense level to 20, and increased her Guidelines range to 33 to 41 months in prison. The court sentenced Saine to 21 months in prison and three years of supervised release.

Saine timely appealed. She raises a host of challenges, attacking almost every stage of litigation. She alleges (1) an error in denying her pretrial motions to exclude evidence under marital privilege, (2) insufficiency of the evidence at trial, (3) errors in not granting a new trial, and (4) an error in calculating her Guidelines range at sentencing. We address each in turn.

---

[2] One witness, Kaylea Campbell, is important to a few of Saine's challenges because the government discovered a video of a previous interview between Campbell and a detective in which she discussed Ricco. The government only disclosed the video to Saine's counsel on the second day of trial. The government claims that they only discovered it that day. *See* R.189, pp.127–28, PageID 1716–17.

**II.**

Saine argues that, under the marital privilege, the district court erred in admitting the text messages between her and Ricco.[3]  We review a district court's evidentiary ruling in the context of marital privilege for an abuse of discretion.  *United States v. Underwood*, 859 F.3d 386, 389 (6th Cir. 2017).  But "the contours of that privilege are reviewed de novo."  *Id.*

For the confidential marital communications privilege to apply, there must be a valid marriage and a communication made in confidence by one spouse to the other.  *Id.* at 390.  But we have long "recognized that confidential marital communications are unprotected when they pertain to joint criminal activity."  *Id.* (citing *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985)).  If there is joint criminal activity, "the public's interest in discovering the truth about criminal activity outweigh[s] the public's interest in protecting the privacy of marriage."  *Sims*, 755 F.2d at 1241.

The court correctly admitted Saine and Ricco's texts under the joint-criminality exception.  Saine texted Ricco, "I've got your gun and stuff in the house," to which he responded, "K."  R.189, p.74, PageID 1663.  Saine knew Ricco was a felon, so she knew he could not legally possess a firearm.  By saying she had *his* gun in the house, Saine suggested that she intended to transfer a firearm to her husband, thus constituting criminal activity.  *See* 18 U.S.C. § 922(d)(1).  The privilege therefore does not apply.  *See United States v. Jackson*, 768 F. App'x 400, 408 (6th Cir. 2019) (affirming admission of testimony when wife had "knowledge of her husband's criminal history" and he asked her to buy him ammunition).

---

[3] Though there are two forms of marital privilege—the adverse-spousal-testimony privilege and the confidential-marital-communications privilege—only the latter could apply here.

Saine asserts that the joint-criminality exception should apply only to "obviously criminal activity," such as statements like "I'll go with you to buy a firearm," "I'll lie and say the guns are for me," or "Let's go buy some guns together." Appellant Br. at 24. We've rejected this reasoning. The "argument that the exception only applies to statements that are 'unlawful on their face' reflects a fundamental misunderstanding of the law." *United States v. Gray*, 71 F. App'x 485, 489 (6th Cir. 2003). "We have explained quite clearly that the exception applies to any conversation '*pertain[ing]* to joint criminal activity.'" *Id.* (quoting *Sims*, 755 F.2d at 1241–43). So the messages "need not reveal an explicit, step-by-step account of the crime to be admissible." *Id.*; *see also United States v. Creech*, 852 F. App'x 172, 174–75, 177 (6th Cir. 2021). Instead, the messages need only "pertain to joint criminal activity." *Underwood*, 859 F.3d at 390; *see also Sims*, 755 F.2d at 1241. A message suggesting transferring firearms to a felon certainly pertains to criminal activity. So the district court did not err.

### III.

Saine's next claim is a twofold insufficiency-of-the-evidence argument. First, she believes there was insufficient evidence to convict her of transferring a firearm to a felon. Second, there was insufficient evidence to convict her of making a false statement in acquiring a firearm.

We review sufficiency-of-the-evidence challenges de novo. *United States v. Small*, 988 F.3d 241, 249 (6th Cir. 2021). But there is a "strong presumption in favor of sustaining a jury conviction." *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994). A defendant seeking judicial reversal of a jury determination of guilt, therefore, "faces a steep climb." *United States v. Stafford*, 639 F.3d 270, 273 (6th Cir. 2011).

We ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Small*, 988 F.3d at 249–50 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). But we don't "reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

**A.**

Federal law prohibits "sell[ing] or otherwise dispos[ing] of any firearm or ammunition to any person" who you know, or have reasonable cause to believe, "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1). In short, you can't knowingly sell or give guns to a felon. No one disputes Ricco's felon status, nor do they dispute that Saine knew Ricco was a felon. So Saine's challenge hinges on whether she knowingly disposed of a firearm to Ricco.

The statute does not define "dispose of," but we have said it occurs when the defendant allows another person to come into actual or constructive possession or control of a firearm. *United States v. Washington*, 166 F. App'x 823, 830 (6th Cir. 2006) (collecting cases). For decades, we've acknowledged that possession of a weapon may be "either actual or constructive and it need not be exclusive but may be joint." *United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997) (quoting *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984)). Though an individual has actual possession when the object is in his "immediate possession or control," a person may also have constructive possession when he "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* (quoting *Beverly*, 750 F.2d at 37).

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Saine disposed of firearms to Ricco. The jury saw video of Ricco and Saine picking out different guns, Saine handing guns to Ricco to examine

them, and then Ricco leaving the store carrying the guns that Saine bought. The jury also heard that Saine kept the rifle in an unlocked zipper bag beneath her and Ricco's bed, which means he could have accessed the gun at any time. R.189, p.58, PageID 1647. And one witness testified that she saw Ricco holding a pistol that matched the description of the one Saine purchased at the gun store. *Id.* at pp.108–09, PageID 1697–98. What's more, the jury saw the text saying, "I've got your gun and stuff in the house." *Id.* at pp.72–74, PageID 1661–63. This constellation of evidence could lead a jury to reasonably conclude that Saine "disposed of" firearms to Ricco, if not actually then at least constructively.

Saine argues that "the evidence at trial did *not* prove an actual transfer of the firearms in question" because there is no evidence corroborating testimony linking Ricco to the guns, nor did Ricco have the guns when he had a few encounters with police. Appellant Br. at 17–19. But this argument demands too much—it demands actual, exclusive possession. To repeat, "possession may be either actual or constructive and it need not be exclusive but may be joint." *Covert*, 117 F.3d at 948 (quoting *Beverly*, 750 F.2d at 37); *see also Washington*, 166 F. App'x at 830 (applying definition to § 922(d)(1)). Saine kept the guns in the home that she shared with Ricco where he could readily access them. Plus, even if the statute did require something closer to complete control, the jury was not unreasonable to credit the evidence that Saine texted Ricco saying, "I've got your gun and stuff in the house," implying the "transfer [of] a firearm so that the transferee acquires possession of the firearm." *See United States v. Jefferson*, 334 F.3d 670, 675 (7th Cir. 2003). We thus reject Saine's first sufficiency challenge.

**B.**

Saine also argues there was insufficient evidence to convict her of making a false statement when acquiring a firearm, in violation of 18 U.S.C. § 922(a)(6). To sustain a § 922(a)(6)

conviction, the government "had to prove beyond a reasonable doubt that: (1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm,[4] and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011).

As mentioned, Saine filled out an ATF Form 4473, Question 21.a of which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form[?]" R.246-1, p.1, PageID 2813. And the Form states, "I certify that my answers . . . are true, correct, and complete," and that "I understand that answering 'yes' to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law." *Id.* at p.2, PageID 2814.

The government points out that the "jury heard that some of the signs of a 'straw sale'"— a sale where the buyer purchases a gun for someone that can't legally buy guns—"include a buyer's apparent lack of interest in the firearm, unfamiliarity with the operation of the firearm, or lack of firearm knowledge, especially when accompanied by another person who handles the firearm and seems more interested or where the person who completes the paperwork is not the one who selected or primarily handled the firearm." Appellee Br. at 27 (citing R.188, Trial. Tr., pp.55–56, 65–69 PageID 1546–48, 1556–60; R.189, p.145 PageID 1734). Most of those aspects were present here.

One witness from Smoky Mountain, who reviewed the surveillance video, testified that Ricco showed more interest in the firearms than Saine. R.188, pp.94–95, PageID 1585–86. This is apparent from the video, which also shows Ricco handling the guns more than Saine. Another witness testified that Saine seemed unfamiliar with the firearms she had purchased. For example,

---

[4] Falsely identifying the true purchaser on Form 4473 is "material" for 18 U.S.C. § 922(a)(6). *Abramski v. United States*, 573 U.S. 169, 190 (2014).

she mischaracterized the manufacturer and caliber of the pistol and didn't know how to load a firearm. R.189, pp. 147–51, PageID 1736–40. Last, and perhaps most obviously, Saine's text message to Ricco that she had "your gun" suggested to the jury that she had purchased at least one firearm to transfer to him, *id.* at p.74, PageID 1663, thus indicating that she lied when she certified on the Form that she was the buyer. Ample evidence supported the jury's determination that Saine made a false statement when buying firearms.

Saine insists that she did not lie on the Form, and that she was in fact the "actual transferee/buyer of the firearms" because she never transferred the guns to Ricco, echoing her argument above. And as discussed there, that argument is unpersuasive. So Saine pivots to arguing that in "other cases where girlfriends or wives are convicted of straw purchases, there are either admissions by the female that they purchased [guns] for their husband, or they are observed transferring possession of the firearms to their boyfriends, knowing their status as a prohibited person." Appellant Br. at 21. Again, Saine sets the bar higher than what the government needed to meet. Indeed, Saine cites no case for this proposition.[5] All said, there did not need to be a direct admission; the jury could infer that Saine lied from all the evidence. *See United States v. Franklin*, 415 F.3d 537, 554 (6th Cir. 2005) ("We may not question credibility determinations made and inferences drawn by the jury unless they are wholly unreasonable.").

## IV.

Saine next contests the district court's decision not to grant a new trial. As she sees it, the court committed various errors: First, the government failed to disclose a recorded interview of

---

[5] In fact, the one case Saine cites cuts the other way. *See* Appellant Br. at 21 (citing *United States v. Manis*, 344 F. App'x 160, 165–66 (6th Cir. 2009) (rejecting sufficiency of the evidence challenge where felon had his wife provide information for background check and she knew her husband's status)).

witness Kaylea Campbell until day two of trial. Second, the district court wrongly denied Saine's requested jury instruction. And third, "the Government did not call a material witness on its witness list." Appellant Br. at 26, 34–35.

Saine must overcome the fact that "[m]otions for a new trial are not favored and are granted only with great caution." *United States v. Fritts*, 557 F. App'x 476, 479 (6th Cir. 2014) (quoting *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976)). "We will not reverse the district court's ruling on a motion for new trial absent a clear abuse of discretion." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Saine cannot make that showing on any of her challenges.

**A.**

Saine first argues that the government failed to provide a recorded interview with one of the witnesses, Kaylea Campbell, until day two of trial. The government concedes this point. At trial, Campbell testified that she had seen Ricco with a gun that looked like the pistol Saine bought. Saine alleges that Campbell admits to being addicted to methamphetamine during the interview, thus casting doubt on her veracity. And Saine now claims that this late disclosure meant that her counsel had insufficient time to use the video to impeach Campbell.

The relevant inquiry here is whether this delay prejudiced Saine. *See United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) ("If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure.") (internal quotation marks omitted). The prejudice inquiry comes down to "materiality." *United States v. Uwazurike*, 580 F. App'x 440, 448 (6th Cir. 2014). And "evidence is material if it impacts a determination of defendant's guilt or innocence, not his ability to prepare for trial." *Id.*

Saine cannot show prejudice. Saine did not "inform the [c]ourt that she needed additional time to review the recording, nor . . . that she had any concerns regarding her ability to fully utilize the information contained therein." R.178, Op. and Order, p.7, PageID 1376. Saine admits that her counsel was able to review most of the video. And Saine's counsel used the video while cross-examining Campbell, R.189, p.124–36, PageID 1713–25, dedicated much of the closing argument to the point that she was not credible, R.190, Trial Tr. pp.32–39, 1784–91, and secured a jury instruction about Campbell's testimony and how it could be considered, R.205, Trial Tr., pp.16–17, PageID 1862–63. Considering how this video was used at trial, it's hard to see how the government's late disclosure prejudiced Saine in a way that would impact the decision of guilt or innocence. Indeed, we've said that late receipt "during trial did not prejudice" the defendant when counsel is able to "argu[e] to the jury that [the witness] was not" credible, "cross-examin[e] him during his testimony," "and obtain[] an instruction to the jury" about his testimony. *Uwazurike*, 580 F. App'x at 448.

## B.

Saine next argues that the district court erred when it denied her requested jury instruction about witness Kaylea Campbell.[6] Saine requested an instruction that would tell the jury Campbell had been "promised" leniency from the prosecution in exchange for her testimony and that she was a drug addict. R.135, Mot. for Jury Inst., p.2, PageID 470. The court rejected the parts about

---

[6] The government urges us to consider this issue waived because Saine did not put it in her list of issues presented. But she raised it below, so we can consider it here.

Campbell being an addict but accepted the portion about the promise of leniency. R.205, Jury Inst. Tr., pp.1–13, PageID 1847–59.

"Trial courts have broad discretion in crafting jury instructions." *United States v. Kettles*, 970 F.3d 637, 646 (6th Cir. 2020) (internal quotation marks omitted). "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002) (quoting *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).

The court partially granted Saine's request. And Saine fails to show how the court abused its discretion. By partially accepting Saine's proffered instruction, the court "substantially covered" the issue Saine wanted addressed. *Khalil*, 279 F.3d at 364. In fact, the jury instructions did mention the promise of leniency that Saine had requested. And with her requested instruction given at least partially to the jury, she fails to show how the court's partial rejection "impair[ed]" her defense. *Id.* Indeed, the jury instruction pertained to Campbell, whom Saine's counsel cross-examined then discussed in closing arguments. So Saine's defense was not impaired.

Saine responds by summarily asserting that she "feels confident that prejudice resulted, since this witness was imperative to the government's case, and her testimony instrumental in her convictions on both counts." Appellant Br. at 35. But there is no discussion of how the outcome would have been different, how the jury instructions without her requested change did not cover everything or inaccurately stated the law, or how her defense was impaired without the instruction. *See Khalil*, 279 F.3d at 364. Saine's challenge therefore fails.

**C.**

Saine also asserts that the court "should have granted a new trial when the Government did not call a material witness on its witness list"—namely, Lacey Hurst, the Smoky Mountain employee who assisted Saine.  Appellant Br. at 35.

The district court pointed out that Hurst "was not on the witness list provided to the Clerk's Office by the Government prior to trial."  R.178, p.9, PageID 1378.  So Saine's claim appears factually inaccurate.  In any event, "when the government opts to disclose a witness list, it is not required to call all witnesses on the list."  *United States v. Vasquez*, 672 F. App'x 636, 639 (9th Cir. 2016).  And Saine presents no cases to the contrary.  What's more, the district court correctly explained that the prosecution's "decision not to call a witness known to the defense does not constitute evidence suppression."  *United States v. Odum*, 878 F.3d 508, 522 (6th Cir. 2017) (*vacated on other grounds by Frazier v. United States*, 139 S. Ct. 319 (2018)); R.178, p.9, PageID 1378.  Again, the district court got it right.

**V.**

Saine last challenges her sentence.  She believes the "district court erred when it applied two separate enhancements under the U.S. Sentencing Guidelines which resulted in double counting."  Appellant Br. at 38.  When it calculated Saine's sentencing range, the court applied both U.S.S.G. § 2K2.1(b)(1)—because the "offense involved three or more firearms"—and § 2K2.1(b)(5)—because Saine had trafficked firearms.[7]

---

[7] The provision as it existed at the time of Saine's sentencing called for an enhancement "[i]f the defendant engaged in the trafficking of firearms."  U.S.S.G. § 2K2.1(b)(5) (2021).  The commentary explained that (b)(5) applied "[i]f the defendant . . . transported, transferred, or otherwise disposed of two or more firearms to another individual . . . and knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful."  U.S.S.G. § 2K2.1(b)(5)

When we examine a sentence, we look for reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). We must ensure ourselves that the sentencing court "committed no significant procedural error," such as improperly calculating the Guidelines range. *Id.* at 51.

A "court may impose two enhancements arising from the same conduct, provided the enhancements 'penalize distinct aspects of a defendant's conduct and distinct harms.'" *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)). Then applying two enhancements to the same conduct will not count as "impermissible double counting." *See United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017).

Saine argues that the court double counted U.S.S.G. §§ 2K2.1(b)(1) and 2K2.1(b)(5) because "[b]oth enhancements require at least 3 firearms and these enhancements both punished Ms. Saine for transferring possession of more than 2 firearms." Appellant Br. at 39. Applying the two enhancements led the district court to calculate a Guidelines range of 33 to 41 months. Saine contends that without the error, her range would have been 21 to 27 months. And even though the trial court varied downward below the recommended range, Saine wants the district court to start over, this time using what she thinks is the correct range.

We've already addressed this argument and held that it's not double counting to apply two enhancements under § 2K2.1(b) when the defendant meets the requirements of each. *See United States v. Freeman*, 640 F.3d 180, 191 (6th Cir. 2011) (citing U.S.S.G. § 2K2.1 cmt. n.13(D)). This

---

cmt. n.13. The commentary's understanding is reflected in the 2023 amendments, which modified § 2K2.1(b)(5) to apply if the defendant "transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who was a prohibited person." U.S.S.G. § 2K2.1(b)(5)(A)–(B).

makes sense because the enhancements punish different aspects of Saine's conduct and different harms. *See Sweet*, 776 F.3d at 451. One punishes the fact that the crime involved multiple firearms, U.S.S.G. § 2K2.1(b)(1), which presents a distinct harm given that more guns are more dangerous than fewer. The other punishes the fact that the guns that she purchased eventually ended up in the hands of someone whose possession would be unlawful, *id.* § 2K2.1(b)(5), which harms society by putting firearms in the hands of people whom the law deems dangerous. *See Smith*, 516 F.3d at 476.

## VI.

For the reasons set forth above, we AFFIRM.